## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RAFAEL GARCIA** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **vs.** | : |
| | : |
| **CITY OF PHILADELPHIA** | :    Civil Action No. 2:24-cv-06316 |
| **1515 Arch Street, 14th Floor** | : |
| **Philadelphia, PA 19102-1595** | : |
| | : |
| **and** | : |
| | :    **JURY TRIAL DEMANDED** |
| **BRIDGET L. KIRN** | : |
| **565 Wigard Avenue** | : |
| **Philadelphia, PA 19128** | : |
| | : |
| **and** | : |
| | : |
| **JOHN/JANE DOE(S) #1 - #10** | : |
| | : |
| **Defendants.** | : |

## <u>COMPLAINT</u>

Plaintiff Rafael Garcia ("Plaintiff" or "Mr. Garcia"), hereby files his Complaint as a result of the prosecutorial misconduct and wrongful imprisonment by the Defendants City of Philadelphia ("City") and then-Assistant District Attorney Bridget L. Kirn ("Kirn"), of which the following is a statement:

### I.    THE PARTIES

1.    Plaintiff Rafael Garcia is an adult individual resident of Philadelphia, Pennsylvania and at all times relevant hereto, was in the Eastern District of Pennsylvania.

2.    Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Office of the District Attorney, which at all times relevant hereto, employed Defendant Kirn.

3.      At all times relevant hereto, Defendant Bridge L. Kirn was an Assistant District Attorney for the Philadelphia Office of the District Attorney acting under color of state law. Defendant Kirn is being sued in her individual capacity, as well as her supervisory capacity.

4.      Defendants John/Jane Doe(s) #1 - #10 are those individuals, unidentified, who investigated and/or prosecuted Mr. Garcia's case, all as will be set forth more fully herein.  The pseudonymous designations are being used to preserve claims against these individuals who will be named more fully if and when their identities are uncovered.

5.      At all times relevant hereto, Defendants' actions deprived the Plaintiff of his constitutional and statutory rights.

6.      At all times relevant hereto, Defendants acted under color of state law.

## II.      JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343(3) and (4) and the aforementioned statutory provision.  Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to adjudicate state law claims.

8.      Venue is appropriate because all of the events and circumstances giving to this cause of action occurred in the Eastern District of Pennsylvania.

## III.      FACTUAL BACKGROUND

9.      On May 23, 2006, Plaintiff was sentenced to a term of incarceration of 35 to 70 years after his conviction for 37 counts of Burglary, 37 counts of Receiving Stolen Property, one count of Criminal Conspiracy, and one count of Corrupt Organizations (a total of 76 counts).

10.      Mr. Garcia was tried by jury along with three co-defendants, all of whom were likewise found guilty: Luis DeJesus (a/k/a "Richie"), Petitioner's nephew Carlos Garcia (a/k/a "Los"), and Gene McFadden (a/k/a "Sparks").

2

11.    The Honorable Thomas Dempsey, now deceased, presided over all pre-trial, trial, and post-trial proceedings within the Philadelphia County Court of Common Pleas.

12.    The trial prosecutor was former Assistant District Attorney, Defendant Bridget L. Kirn, who was, upon information and belief, terminated from the District Attorney's Office in early 2018 for reasons unknown.

13.    At all times relevant hereto, Defendant Kirn was trained and supervised by Defendant City.

14.    The critical trial witnesses for the Commonwealth, the testimony of whom resulted in Plaintiff's conviction, were all "cooperators:"

    (a) William Leinhauser (a/k/a "Joker"), a co-conspirator who pled guilty to a post office burglary and other charges, including an armed robbery committed while he enjoyed being free on "sign-own-bond" status, which was recommended by police officials in writing;

    (b) Tania Eckert, the girlfriend of Carlos Garcia and an uncharged accomplice in some of the burglaries; and

    (c) Jocelyn Garcia, the Plaintiff's sister, mother of Carlos Garcia, paramour of Luis DeJesus, and another uncharged accomplice to multiple burglaries and/or counts of receiving stolen property.

15.    On August 27, 2018, Rafael Garcia filed his second *pro se* PCRA Petition, as well as Memorandum of Points and Authorities, alleging multiple instances of egregious and previously undisclosed prosecutorial misconduct, which included, inter alia, after-discovered evidence of witness intimidation and/or extortion of Jocelyn Garcia by the prosecution.

16.    As part of his Petition, Mr. Garcia attached an Affidavit sworn by his sister, now named Jocelyn Garcia-Santiago, detailing the subversive and unlawful conduct utilized by Defendant Kirn to secure her testimony.

17.    In September of 2020, Plaintiff filed an Amended PCRA Petition with the Philadelphia County Court of Common Pleas.

18.    Despite the continuing (and presumably deliberate) absence of full discovery from the Commonwealth, including all of the so-called "Brady material" referenced and discussed *infra*, Mr. Garcia's Amended Petition for PCRA Relief was filed on July 13, 2021.

19.    The Commonwealth responded via letter brief filed on October 25, 2021 by Assistant District Attorney Daniel V. Cerone, who has since left the District Attorney's Office.

20.    In response to the Commonwealth's letter brief, counsel for Mr. Garcia filed a lengthy Petitioner's Rebuttal, with three exhibits, on October 17, 2022.

21.    Between that pair of pleadings, former Assistant District Attorney Cerone was replaced on the PCRA litigation by Assistant District Attorney Jennifer Andress of the Philadelphia District Attorney's Office, Law Division.

22.    Based upon a publicized change in the District Attorney's Office's policy regarding post-conviction file inspections in 2018 and Mr. Garcia's counsel's repeated but stonewalled requests for such an opportunity over the course of several years, Mr. Garcia's counsel was finally granted permission by Defendant City to review the Commonwealth's files, folders and documents relative to Plaintiff's case and his three co-defendants at trial.  Also included in this untimely disclosure were the withheld documents related to William Leinhauser, the cooperating informant and self-described heroin addict, who ultimately entered guilty pleas to burglary, forgery and knifepoint robbery, graded only as a felony second-degree.

4

23.    The case documents filled seven large storage boxes, and most were extremely, and likely strategically, very poorly organized.

24.    Mr. Garcia's counsel expended an unnecessarily extraordinary amount of time to review the file materials which appeared in large measure to have been deliberately disorganized.

25.    When a relevant document was found, Defendant City would not allow it to be copied or removed, but only scanned for additional "vetting" by the District Attorney's Office.

26.    By the end of this process, Mr. Garcia's counsel had scanned hundreds of pages of "additional discovery" into the District Attorney's Office's database for subsequent approval and delivery.

27.    The majority of these documents outrageously comprised undeniable but **as-yet-undivulged** Brady material.

28.    Specifically, Defendants Kirn and the City deliberately concealed and never disclosed, contrary to the actual evidence offered at trial, the following:

(a) following William Leinhauser's arrest for the post office burglary and forgery cases, the bail commissioner awarded him – a drug addict with a prior record and Virginia driver's license – release on "sign-own-bond" because his police "handler," Detective Gerard Brennan of the Major Crimes Unit, highlighted a request that Leinhauser should not be detained since he was assisting law enforcement against a big burglary ring active in Northeast Philadelphia;

(b) William Leinhauser asked that his family to be moved out of their neighborhood and Chief Assistant Leonard Deutchman transmitted a written request to Deputy District Attorney Hilary Connor for substantial funding to accomplish such a relocation.  Dubiously, there was no return endorsement by Deputy District

Attorney Connor indicating whether those relocation funds were approved or not, and nowhere in the multiple Leinhauser trial files was there any response paperwork concerning this request.

(c) William Leinhauser was free on the streets, due to the secret release arrangement with the Defendants at his arraignment, not only to wear the body wire he eventually did, but also to rob a female cashier named Gi Son Park, at knifepoint, inside Bambi Dry Cleaners on South Broad Street;

(d) Assistant District Attorney Kirn reduced the Park robbery down from its proper grade of felony-one on the returned bill of information to a mere felony-two, thereby slashing in half how much prison time the Defendants' key witness might face when he was later sentenced, and surreptitiously granting him a testimonial benefit which went completely unexplained to Mr. Garcia's tribunal and finder-of-fact;

(e) on January 11, 2005, William Leinhauser and his attorney signed a formal "Memorandum of Agreement" between himself and Chief Assistant Deutchman for the Commonwealth prior to entering his guilty pleas before the Honorable Pamela Pryor Dembe.  Within the Memorandum, Mr. Leinhauser promised to "waive his preliminary hearing in MC 0408-2678 1/1 and MC 04082679 1/1 [the post office cases] and will plead guilty to **all charges** in those two matters as well as in CP 0411-1046 1/1 [the knifepoint Park robbery]; and

(f) paragraph 11 on the final page of the Memorandum of Agreement explicitly set forth the following: "This Agreement is complete and represents the entire

6

understanding between [Leinhauser] and the Commonwealth. It may not be amended or supplemented except in writing signed by both parties."

29.    Hence, when William Leinhauser was later permitted by Defendant Kirn to enter his guilty plea to just a few of the charges, with the Park robbery reduced to a felony as a second-degree, they not only broke the executed Memorandum of Agreement between the parties, Mr. Leinhauser also **perjured** himself before the jury when he falsely testified on direct examination that he was not promised **anything** by the Commonwealth.   This, of course, meant that Defendant Kirn and her supervisors **suborned** that perjury by not correcting it.

30.    The above items were far from the only violations discovered by Mr. Garcia's counsel when finally "permitted" to inspect the case files.

31.    In addition, it **finally** came to light – some 17 years after the Commonwealth knew about it – that the two principal prosecution witnesses had serious mental health histories which obviously call into question their competence to take the stand and/or their credibility in testifying.

32.    However, these records were never turned over to defense counsel at trial, nor were they mentioned anywhere at all within the stenographic record.

33.    After William Leinhauser pled guilty to robbery in January of 2005, his sentencing was deferred until March 8, 2005, so that the usual reports could be prepared and so that his postal cases of burglary and forgery could be consolidated for ultimate disposition by Judge Dembe under Rule 701, strategically concocted to be at some point <u>after</u> he was finished cooperating and testifying for Defendant Kirn in the Plaintiff's case.

34.    Such pre-sentence reports were indeed filed in early 2005 – over a year prior to the jury proceedings against Mr. Garcia – but they were hardly "regular" in their content.

35.     Lawrence Byrne, a licensed psychologist, submitted his Mental Health Evaluation for William Leinhauser by mid-January of 2005.

36.     Among other highlights, Dr. Byrne referenced several psychiatric hospitalizations for Leinhauser, including **17 separate suicide attempts**.

37.     Dr. Byrne also reported the following, taken from handwritten notes during the inspections:

> Axis I – "Severe Psychoactive Substance Abuse [and] Dependence on Heroin … He also suffers from Chronic Dysthmic Disorder [Persistent Depression]"

> Axis II – "Mixed Personality Disorder with Avoidance Traits [and i]mpulsive features associated with Substance Abuse"

> Axis III – "No known diagnosis"

38.     Later, on February 25, 2005, the Pre-Sentence Report for William Leinhauser's robbery case was submitted, which was based upon a prison interview conducted on January 16th of that year, and it also conclusively confirmed Leinhauser's pronounced mental health problems.

39.     That report mentions six or seven psychiatric hospitalizations, plus multiple suicide attempts – primarily by wrist-slashing or other body cuttings.

40.     Therefore, as to her critical trial witness William Leinhauser, Defendant Kirn withheld crucial impeachment evidence that she possessed and to which only she had access.

41.     Amazingly, the same appears to be true regarding Jocelyn Garcia, who also provided damning "evidence" against Mr. Garcia, obtained through a less than fully explained stipulation about her coerced testimony at his preliminary hearing.

42.     A folder marked "RESTITUTION" contained one, and only one, copy of a clearly misfiled Discharge Order/Summary from Friends Hospital, a psychiatric facility located in

Philadelphia.  It is obvious that the file label was designed to misdirect scrutiny from Jocelyn

Garcia's problems, and it worked for over 18 years post trial.

43.    Prepared by Martin Plutzer M.D., this document indicated that Jocelyn Garcia

was admitted there on February 10, 2006 (while Mr. Garcia's jury trial was in progress) and was

discharged a week later on February 17th (well before Mr. Garcia's trial had ended and before

the stipulation to her earlier testimony). The report noted:

> Axis I – "Schizophrenia de-paranoid type"
>
> Axis IV – "Medication noncompliance"

44.    More importantly, Dr. Plutzer's findings included that Jocelyn Garcia was

"hearing voices" and suffering from "visual hallucinations;" moreover, he noted that she had

"tried to jump through a window" and was "concussed."

45.    This critical and blatant impeachment evidence was not turned over to Mr. Garcia

or his defense attorney at trial.

46.    However, Jocelyn Garcia was indeed not hospitalized and therefore, if competent,

available to testify in person on February 22, 2006, the date when her preliminary hearing notes

were somehow, for unknown reason(s), admitted against her brother Rafael Garcia, to his

detriment.

47.    In addition to the misfiled discharge summary from Dr. Plutzer, counsel also

found a folder labeled "DOCTOR'S REPORT." In it were six copies of a letter **faxed** to Judge

Thomas Dempsey from psychiatrist Neil Schwab, also affiliated with Friends Hospital.

48.    Dated February 15, 2006 – and likewise **faxed** to "ADA Bridget Kirn" – it

indicated that patient Jocelyn Garcia suffered from "chronic mental illness" and auditory

hallucinations, and she had a "previous hospitalization with similar symptoms."

49.    Dr. Schwab's letter requested that Jocelyn Garcia be excused from testifying, but there is no ruling anywhere within the trial record as to Judge Dempsey's action on this request.

50.    Even more critically, this letter too was never timely divulged to the defense as impeachment material. Plaintiff vigorously denies that it ever was – it was, after all, information regarding his sister that he would surely remember. Further, it certainly appears that the letter was deep-sixed, since there remained a full set of six copies within the folder, and none had a fax confirmation page attached.

51.    No ethical prosecutor can call to the stand any person who is floridly psychotic – that is, "hearing voices," "suffering from visual hallucinations" and/or attempting suicide, without disclosing the mental health condition(s) of such witness to the sitting judge, the defense attorney(s) at bar and the empaneled jury. Doing so constitutes a direct affront against truth, due process, and justice under law.

52.    Consequently, when Mr. Garcia's PCRA counsel found these four documents on June 15, 2022, and sent an e-mail to Assistant District Attorney Andress requesting an immediate, in-office conference, since the documents could only be scanned rather than copied. Andress later replied that she was out of office that afternoon, June 15th.

53.    One week later, on June 22, 2022, Mr. Garcia's PCRA counsel transmitted another, much lengthier, e-mail to Assistant District Attorney Andress, which set forth the most salient discoveries during the file inspections, including the mental health issues pertaining to William Leinhauser and Jocelyn Garcia.

54.    Additionally, that writing set forth language from the United States Justice Manual, which recommends that prosecutors promptly disclose **all** "Benefits provided to witnesses" including:

● Dropped or reduced charges

● Immunity …

● Expectations of downward departures or motions for reduction of sentence

● Assistance in a state or local criminal proceeding

● Monetary benefits

● Non-prosecution agreements …

● Letters to other law enforcement officials … setting forth the extent of a witness's assistance or making substantive recommendations on the witness's behalf

● Relocation assistance …

● Known but uncharged criminal conduct (that may provide an incentive to curry favor with a prosecutor) …

● **Known substance abuse or mental health issues** or other issues that could affect the witness's ability to perceive and recall events [emphasis added].

55.    The Commonwealth replied on June 28, 2022, that Mr. Garcia's request for the scanned documents was "in the queue for processing," and that the mental health documents might comprise "confidential information" such that additional steps would be necessary before such material could be conveyed.

56.    On July 7, 2022, Plaintiff's PCRA counsel wrote another e-mail **re-requesting** all the scanned documents, and reminding the Commonwealth of the next hearing date, October 20, 2022.

57.    This July 7, 2022, letter also addressed was the privacy/confidentiality/privilege concerns interposed by the District Attorney's Office at this late date:

[Petitioner's] response to such an assertion would be that even if those documents should not get 'automatically' turned over to

defense counsel, the trial prosecutor Bridget Kirn (a) certainly knew that they existed; (b) knew that the [four] defense attorneys did not have access to them; (c) knew full well how damaging they would [and] could be as impeachment evidence against [two] of her most critical witnesses for the Commonwealth; and (d) knew – or doubtless **should** have known – how they undeniably constituted Brady/Giglio/Bagley material. Yet, apparently, she kept those cards fully face-down, as if this weeks-long jury trial were some poker game she just had to win …

58.    On July 28, 2022, Assistant District Attorney Andress (who had been on vacation) responded by writing that the documents unrelated to mental health had been approved for disclosure and transmission to Mr. Garcia's counsel, but bogusly asserted that a court order would be required before the District Attorney's Office could turn over the mental health materials pertaining to William Leinhauser and Jocelyn Garcia.

59.    On August 2, 2022, Mr. Garcia's PCRA counsel acknowledged the July 28th correspondence and asked once again that the file inspection discovery be expedited and sent, "as quickly as you can."

60.    That same date, Assistant District Attorney Andress notified her support staff to send present counsel "the requested discovery …, minus the three [sic] mental health documents."

61.    Three weeks later, "the requested discovery" was still in limbo, and PCRA counsel wrote yet again to Assistant D.A. Andress on August 23rd. That message included the following questions:

[Why is] Leinhauser's M.H. Evaluation for sentencing [deemed] "privileged," as it was *not* prepared by any psychiatrist or care provider for him[?] Plus, such documents are routinely cited, even quoted verbatim, at sentencing hearings, with court staff [and]/or complete strangers in the courtroom. Since no "protections" are ever mentioned or afforded then, why or how can they be raised by someone other than Leinhauser now?

62.    Finally, after more than ten weeks had elapsed, Mr. Garcia's PCRA counsel received the scanned documents via an e-mail link on August 26, 2022. Receipt was duly acknowledged on August 29th.

63.    Assistant District Attorney Andress followed up the very next day, advising Mr. Garcia's PCRA counsel that the Commonwealth "**will not oppose the granting of an order** [emphasis supplied]. We just need to have that court order to send copies of those [mental health] documents."

64.    On September 21, 2022, to procure the mental health paperwork at issue, Mr. Garcia's PCRA counsel filed a Motion to Compel Disclosure of Mental Health Records for Prosecution Witnesses, which was ultimately granted, and the documents were finally produced.

65.    According to 204 Pa.Code Rule 3.8 (Special Responsibilities of a Prosecutor):

> The prosecutor in a criminal case shall: . . . (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.

The comment to this Rule reads:

> (1) A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. Many jurisdictions have adopted the ABA Standards of Criminal Justice Relating to Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense. Applicable law may require other measures by the prosecutor and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.

66.    Here, Plaintiff had no legitimate chance to question or challenge the competency of William Leinhauser or Jocelyn Garcia to testify against him, because the records necessary to litigate such an issue were intentionally suppressed by Defendants Kirn and City.

67.    Moreover, Plaintiff and his court-appointed trial attorney were deprived of a valid and weighty means to attack the testimonial credibility of those two key witnesses, for the same reason: unlawful and intentional suppression of usable impeachment evidence by Defendants Kirn and City.

68.    "The Brady Rule" – named after <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) – requires prosecutors to disclose to the defense any and all materially exculpatory evidence in their possession. So-called "Brady material" (that is, the evidence a prosecutor must disclose under this rule) includes any evidence favorable to the accused, any evidence that would go toward negating a defendant's guilt or reduce a defendant's potential sentence, **or evidence going to the credibility of a witness**.

69.    Further, in cases subsequent to Brady, the Supreme Court has eliminated the requirement for the accused to have made a request for such favorable information, stating that **the prosecution has a constitutional duty to disclose, which is triggered by the potential impact of favorable but undisclosed evidence**. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995) and <u>United States v. Bagley</u>, 473 U.S. 667 (1985).

70.    In both <u>Bagley</u> and <u>Kyles</u>, the Supreme Court further defined the materiality standard, outlining four aspects of materiality. First, the "reasonable probability" of a different result is **not** a question of whether the defendant would, more likely than not, have received a different verdict with the evidence, but whether the prosecution's evidentiary suppression undermines confidence in the outcome of the trial. The second aspect is that it is not a

sufficiency of evidence test, and the defendant only has to show that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. Third, there is no need for a harmless error review, because a Brady violation, **by definition, cannot be treated as harmless error**. The fourth and final aspect of materiality stressed by the <u>Kyles</u> decision is that the suppressed evidence must be considered **collectively**, not item by item, looking at the cumulative effect to determine whether a reasonable probability is reached. <u>See</u> <u>Kyles</u>, 514 U.S. at 433-438.

71.     Under Pennsylvania jurisprudence, an undisclosed but "sweetheart" guilty plea deal for the testimony of a prosecution witness, such as occurred with William Leinhauser in this case, would warrant relief, standing alone. However, as set forth above, there is much, much more than this one single issue on this hidden lopsided plea deal.

72.     In <u>Commonwealth v. Strong</u>, 761 A.2d 1167 (Pa. 2000), a death penalty case, appellant had brought a PCRA claim concerning the favorable guilty plea outcome for a witness named Alexander, an accomplice of Strong who was under homicide charges himself, because the Commonwealth had maintained an adamant "no deals" position throughout Strong's murder trial. The PCRA court below found no Brady violation, but the Supreme Court reversed, and granted Strong a new trial on due process grounds. In doing so, the Court reasoned:

> [T]he facts in this case strongly indicate that Alexander's testimony was in exchange for what he believed would be a beneficial outcome to him. That understanding was material information that appellant's jury should have been informed of when weighing Alexander's credibility. There is a reasonable probability that had this information been revealed, the outcome of [Strong's] trial would have been different.

761 A.2d at 1175.

73.     The various violations of <u>Brady</u> – plus its Pennsylvania progeny like <u>Strong</u> – which occurred during Mr. Garcia's trial represent only part of a pattern of prosecutorial misconduct which fatally infected his case, literally from start to finish.

74.     The paperwork in the District Attorney's files shows just how planned and premeditated the misconduct by Defendant Kirn and those supervising her actually was.

75.     Plaintiff's prosecution comprised in every way, shape and form a "big deal" – the kind of special assignment which could make or break an attorney's career in public service: dozens and dozens of unsolved break-ins, the vicious nature of the residential burglaries, theft of so many items carrying enormous sentimental value, the fact that police homes were also "hit" by the ring, involvement of federal authorities like the Postal Inspection Service, the possibility of federal adoption for the Wissinoming Branch burglary, use of body-wire surveillance on William Leinhauser, the need for a five-page cooperation agreement in advance and hands-on supervision by the supervisor for the Economic Crimes Unit.

76.     In fact, this was such a "game-changing," must win assignment for Defendant Kirn that she typed out her opening and closing statements to the jury.

77.     Those speeches were not given from mere outline notes or index cards, the norm for most jury trial attorneys.  Instead, they were read nearly verbatim – a fact discovered only due to the June 2022 file inspections.

78.     This discredits any claim of "harmless error" due to some inadvertently untrue remark during "oratorical flair," as the Commonwealth dismissively may claim.

79.     For example, Defendant Kirn promised the jury that she would prove how Plaintiff was an admitted expert in residential wiring but later failed to do so by any competent evidence.  That lie was pre-recorded.

16

80.    More importantly, Defendant Kirn's most harmful misconduct occurred during summation.

81.    In her desperate zeal to link Plaintiff to a storage room at a property on Edmund Street that contained stolen items more than the actual evidence did, she told the jury in closing that a suitcase with his name on it was found by police there.

82.    That remark occurred **after** all of the evidence had been produced, so it could have been "fact-checked" against her trial notes or with the police subpoenaed for trial. Yet it surely was not, or else it was an abject prevarication.

83.    In either event, the false statement was "scripted," and it was both **undeniably wrong** and **undeniably prejudicial** to Plaintiff.

84.    In normal usage, the phrase "prosecutorial misconduct" remains singular, as it should be. In a better world of seeking truth and dispensing justice, perhaps one instance of misconduct per jury trial conducted would be the maximum. However, when there are as many acts of misconduct as took place during Plaintiff's proceedings, then relief must follow, and it did.

85.    On March 12, 2024, the Honorable Ramy I. Djerassi granted Plaintiff's PCRA Petition, vacated Plaintiff's sentence and ordered a new trial. See copies of the Court's Orders, attached hereto as Exhibit "A."

86.    Solely to avoid facing a new trial and spending another two years in prison awaiting a retrial above nearly 20 years Plaintiff already spent in jail, Plaintiff pled guilty to some charges of Burglary, Receiving Stolen Property and Criminal Conspiracy and was released with time served.  All of the many remaining charges were nolle prossed.  Id.

87.     Plaintiff's plea to these charges was not based on any of the evidence he now challenged in this § 1983 claim.

88.     Plaintiff's claims do not depend on his ultimate guilt or innocence.

89.     Defendants clearly deprived Plaintiff of his Fourteenth Amendment rights when they failed to tell his trial counsel about the psychiatric hospitalizations of two "key" Commonwealth witnesses.

90.     The stenographic record for William Leinhauser's testimony and the stipulation for Jocelyn Garcia reveal that there was **no** cross-examination by any lawyer about mental health issues whatsoever.

91.     It is clear that Defendants Kirn and the City suppressed such evidence, so that a pair of key prosecution witnesses would get to the jury "squeaky clean" of their pronounced mental health issues.

92.     Under Brady, *supra*, and its progeny, Defendant Kirn was ethically required, **at the very least**, to submit those mental health records to Judge Dempsey *in camera* for his Honor's private review and ruling. However, she did not.

93.     By withholding such crucial exculpatory evidence from the trial court, Mr. Garcia, his three co-defendants and the jury, Defendants Kirn and the City committed grievous misconduct during trial.

94.     Additionally, since Judge Dempsey never had a chance to rule on such evidence, Plaintiff was deprived of a critical issue both for his primary appeal(s) and subsequent PCRA litigation.

95.    The undisclosed immunity granted to witnesses Tania Eckert, who was arrested but released, and Jocelyn Garcia, who was not charged because she testified against Plaintiff, comprises further misconduct by Defendants.

96.    All immunity in Pennsylvania is governed and authorized by statute, and limited to use immunity.

97.    As a public policy matter, appropriate court orders are required to grant immunity.

98.    Investigators freed Tania Eckert, despite the probable cause to charge her as an accomplice and possessor of the stolen property found throughout her automobile.

99.    Defendant Kirn allowed Jocelyn Garcia to walk away from her crimes and her pivotal role as the warehouser for this burglary enterprise.

100.    The jury never received the cautionary instructions about their testimony which were required to ensure fairness to Plaintiff and his co-defendants.

101.    As a result, Plaintiff served 19 years and seven months in prison for crimes he had no reasonable chance of defending and/or winning because of all of the above misconduct.

102.    For many years dating back at least to the 1970s and continuing well beyond the time of the investigation of the burglaries for which Plaintiff was wrongfully convicted, the City of Philadelphia had in force and effect a policy, practice or custom of unconstitutional misconduct in criminal investigations, and in particular, using coercive techniques in interviews and interrogations to obtain incriminating evidence; fabricating inculpatory evidence; concealing or withholding exculpatory evidence; tampering or manufacturing evidence; and fabricating incriminating statements from witnesses, suspects and arrestees.

103.    This policy, practice or custom involved the use of various techniques to coerce incriminating statements, including: isolation; separating juvenile or otherwise vulnerable

suspects or witnesses from friends and family; subjecting individuals to needlessly prolonged interrogations; making false promises, including the promise that a suspect or witness will be allowed to go home if he or she makes an inculpatory statement and/or be given favorable treatment; the use of threat of physical violence; authoritative assertions of a suspect's guilt, including confrontation with false inculpatory evidence; and providing false assurances, including to juveniles and other vulnerable people, that the suspect or witness will benefit from making an inculpatory statement that minimizes the suspect's own involvement.

104.    These practices were well known to the City of Philadelphia and its policymakers with respect to criminal investigations and prosecutions as a result of newspaper investigations, including Pulitzer Prize winning reporting in the Philadelphia Inquirer in 1977, governmental investigations, complaints from lawyers and civilians and internal police investigations.

105.    Additionally, Defendant Kirn has a history and pattern of prosecutorial misconduct.  In the 2016 retrial of Anthony Wright – a man originally convicted in 1993 of the rape and murder of an elderly woman (CP-51-CR-1131582-1991) –  in which Defendant Kirn served as the lead prosecutor, she stood silent while two critical police detectives gave false testimony that they had no knowledge of any exculpatory evidence when she knew this was a lie. In fact, there was exculpatory DNA evidence presented by the defense, and as a result, Mr. Wright was acquitted after serving 25 years in prison for a crime he did not commit.  This case was written about extensively in local and national media, including the Philadelphia Inquirer, Rolling Stone and Slate.

106.    At the time of the investigation and prosecution of Rafael Garcia, and for many years before and thereafter, the City of Philadelphia and the Office of the District Attorney have been deliberately indifferent to the need to train, supervise and discipline its prosecutors.

**COUNT I – 42 U.S.C. § 1983**
**DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW AND DENIAL OF**
**A FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT**
**PLAINTIFF v. ALL DEFENDANTS**

107.    The allegations contained in the paragraphs above are incorporated herein as though fully set forth at length.

108.    Defendant Kirn, acting within the scope of her employment with the City of Philadelphia, deprived Mr. Garcia of his clearly established constitutional right to due process of law and a fair trial by:

(a) fabricating, planting and/or tampering with evidence, including, but not limited to knowingly lying to the jury during closing argument that a suitcase with Mr. Garcia's name on it was found at a location containing stolen goods and that he was renting a room at that location, when both of these assertions were blatant lies; and knowingly lying to the jury that Mr. Garcia was an "admitted expert in electrical wiring," which was also untrue.

(b) Deliberately deceiving counsel and the Court by concealing and/or suppressing relevant and material evidence, including, but not limited to the mental health histories of two key witnesses.

(c) Using coercion and/or threats to obtain inculpatory witness statements and Mr. Garcia's "confession."

(d) Failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to believe that Mr. Garcia had participated in the burglaries, and ignoring evidence that exculpated Mr. Garcia.

109.    Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth and with deliberate indifference to Mr.

21

Garcia's clearly established constitutional rights. No reasonable prosecutor in 2006 would have believed this conduct was lawful.

110.    Defendants' acts and omissions, as described above, were the direct and proximate cause of Mr. Garcia's injuries. Defendants knew or should have known that their conduct would result in Mr. Garcia's wrongful trial and the harms he sustained as a direct result.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount substantially in excess of the arbitration limits, together with punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, costs of this litigation, delay damages, pre- and post-judgment interest and any further relief this Honorable Court deems just and appropriate.

## COUNT II – 42 U.S.C. § 1983
## SUPERVISORY LIABILITY CLAIM
## PLAINTIFF v. DEFENDANT BRIDGET L. KIRN

111.    The allegations contained in the paragraphs above are incorporated herein as though fully set forth at length.

112.    Defendant Kirn acted recklessly and/or with deliberate indifference to Mr. Garcia's constitutional rights by failing to adequately train, supervise and discipline the attorneys, investigators and other agents assigned to this investigation (Doe(s), whose identities will be confirmed in discovery), thereby allowing and causing these agents to deprive Mr. Garcia of his clearly established constitutional rights, including his rights to be free from the deprivation of liberty without due process of law and to a fair trial under the Fourteenth Amendment.

113.    Defendant Kirn was personally involved in the prosecution of Mr. Garcia and directly supervised the investigative acts taken by himself and other agents of the District Attorney's Office.

114.    The reckless and deliberately indifferent conduct of Defendant Kirn violated the clearly established duty, in 2005-2006, to supervise the agents, and no reasonable assistant district attorney in 2005-2006 would have believed that reckless and deliberately indifferent supervision in the face of actual or constructive notice of misconduct by their subordinates was lawful.

115.    Defendant Kirn's acts and omissions, as described in the preceding paragraphs, were the direct and proximate cause of Mr. Garcia's injuries.  Defendant Kirn knew or should have known that her conduct would result in Mr. Garcia being subjected to a denial of due process and an unfair trial.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount substantially in excess of the arbitration limits, together with punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, costs of this litigation, delay damages, pre- and post-judgment interest and any further relief this Honorable Court deems just and appropriate.

### COUNT III – 42 U.S.C. § 1983
### MUNICIPAL LIABILITY CLAIM
### PLAINTIFF v. DEFENDANT CITY OF PHILADELPHIA

116.    The allegations contained in the paragraphs above are incorporated herein as though fully set forth at length.

117.    The City of Philadelphia, by and through its final policymakers, had in force and effect during the time of Mr. Garcia's arrest and trial, and for many years preceding and following the trial, a policy, practice or custom of unconstitutional conduct in burglary and other criminal investigations, that included using coercive techniques in interviews and interrogations; fabricating evidence; fabricating incriminating statements from witnesses, suspects and arrestees by coercion, threats and suggestion; tampering with evidence; planting evidence; concealing

and/or withholding exculpatory evidence; and failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to arrest and prosecute.

118.    Policymakers for the City of Philadelphia had actual or constructive notice of the above practices, policies and customs, but repeatedly failed to undertaken any meaningful investigation into allegations that criminal detectives, investigators and attorneys at the District Attorney's Office were using coercive techniques in interviews and interrogations; withholding exculpatory evidence; fabricating inculpatory evidence; tampering with evidence; planting evidence; fabricating incriminating statements from witnesses, suspects and arrestees; failing to conduct a reasonably thorough and fair investigation that considered evidence negating grounds to arrest and prosecute; and failing to take appropriate remedial and/or disciplinary actions to curb the above misconduct.

119.    Defendant City acted recklessly and/or with deliberate indifference to Mr. Garcia's constitutional rights by failing to adequately train, supervise and discipline Defendant Kirn and the attorneys, investigators and other agents assigned to this investigation (Doe(s), whose identities will be confirmed in discovery), thereby allowing and causing these agents, including Defendant Kirn, to deprive Mr. Garcia of his clearly established constitutional rights, including his rights to be free from the deprivation of liberty without due process of law and to a fair trial under the Fourteenth Amendment.

120.    Defendant City did not adequately train Defendant Kirn and the attorneys, investigators and other agents assigned to this investigation (Doe(s), whose identities will be confirmed in discovery) regarding the requirement to turn over Brady evidence, which is confirmed by the fact that this critical evidence was deliberately withheld from Mr. Garcia and his trial counsel.

121.    Furthermore, Defendant City did not adequately supervise Defendant Kirn and the attorneys, investigators and other agents assigned to this investigation (Doe(s), whose identities will be confirmed in discovery) regarding this <u>Brady</u> evidence, and thus allowed the non-disclosure of this crucial impeachment evidence to Mr. Garcia and his trial counsel.

122.    The unconstitutional municipal customs, practices and/or policies described above were the moving force behind Mr. Garcia's trial and the other injuries and damages set forth in this Complaint.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount substantially in excess of the arbitration limits, together with punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, costs of this litigation, delay damages, pre- and post-judgment interest and any further relief this Honorable Court deems just and appropriate.

**COUNT IV**
**DAMAGES**
**<u>PLAINTIFF v. ALL DEFENDANTS</u>**

123.    The allegations contained in the paragraphs above are incorporated herein as though fully set forth at length.

124.    The unlawful, intentional, willful, deliberately deceptive, reckless, deliberately indifferent and/or malicious actions and omission of all Defendants caused Mr. Garcia to be compelled to stand trial, which resulted in pain and suffering, mental anguish, emotional distress, restrictions on personal liberty, loss of freedom, deprivation of familial relationships, economic harms and other associated damages.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount substantially in excess of the arbitration limits, together with punitive damages, attorneys' fees

pursuant to 42 U.S.C. § 1988, costs of this litigation, delay damages, pre- and post-judgment interest and any further relief this Honorable Court deems just and appropriate.

**COUNT V**
**PUNITIVE DAMAGES**
**PLAINTIFF v. ALL DEFENDANTS**

125.    The allegations contained in the paragraphs above are incorporated herein as though fully set forth at length.

126.    Defendants acted willfully, deliberately, maliciously and/or with reckless disregard for the Plaintiff's constitutional rights, and punitive damages should therefore be awarded against Defendants.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount substantially in excess of the arbitration limits, together with punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, costs of this litigation, delay damages, pre- and post-judgment interest and any further relief this Honorable Court deems just and appropriate.

**NOTICE OF PRESERVATION OF EVIDENCE**

PLAINTIFF HEREBY DEMANDS AND REQUESTS THAT DEFENDANTS TAKE NECESSARY ACTION TO ENSURE THE PRESERVATION OF ALL DOCUMENTS, COMMUNICATIONS, WHETHER ELECTRONIC OR OTHERWISE, ITEMS AND THINGS IN THE POSSESSION OR CONTROL OF ANY PARTY TO THIS ACTION, OR ANY ENTITY OVER WHICH ANY PARTY TO THIS ACTION HAS CONTROL, OR FROM WHOM ANY PARTY TO THIS ACTION HAS ACCESS TO, ANY DOCUMENTS, ITEMS, OR THINGS WHICH MAY IN ANY MANNER BE RELEVANT TO OR RELATE TO THE SUBJECT MATTER OF THE CAUSES OF ACTION AND/OR THE ALLEGATIONS OF THIS COMPLAINT.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial.

THE BEASLEY FIRM, LLC

BY:    /s/ Dion G. Rassias
DION G. RASSIAS, ESQUIRE
1125 Walnut Street
Philadelphia, PA 19107
(215) 592-1000
(215) 592-8360 (facsimile)

DATED:  November 26, 2024

# EXHIBIT "A"

## Trial Disposition and Dismissal Form

| | | |
|---|---|---|
| ____ Currently In County Prison | ____ ARD | Page: ___1___ of ___2___ |
| ____ Intake given at time of Plea | ____ Standard | Date: _____ |
| ____ Plea | ____ Revo. (Prob./Parole) | PSI Agent: _____ |
| ____ Plea & Sentencing | ____ ICC | Court Rep. Initials: _____ |
| ____ Trial | ____ Bench Warrant Review Hearing | Case Assigned To: _____ |
| ____ IPP | | Collections Initials: _____ |
| File # _____ | Presently on supervision with P.O. _____ | |

### DISPOSITION / COMMITMENT

Name: **Garcia, Rafael**      Time: _____      D.A.: *Philadelphia County District Attorney's Office*

Race: **White**   Sex: **Male**      PID: **0698952**      Disp.Authority: Djerassi, Ramy I.

Sentencing Date: _____      Typing Date: _____

Defense Counsel: Shotzbarger, George J.      Court Room: **1106**

48 Hrs: _____    30 Days: _____    90 Days: _____    BAC: _____    CRN Date: _____

| DOCKET OTN DATE of OFFENSE | COUNT - OFFENSE FINE RANGE PLEA | OFFENSE CODE GRADE | DISPOSITION DISPOSITION DATE SENTENCING DATE | FINES COSTS RESTITUTION |
|---|---|---|---|---|
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 1 - BURGLARY | 18§3502 | Nolle Prossed Disposition Date: 03/12/2024 Sentence Date: 05/23/2006 Disposing Authority: Djerassi, Ramy I. | ____ Costs/ ____ Fines ____ EMSA ____ MCARE ____ Rest |
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 2 - THEFT BY UNLAWFUL TAKING OR DISPOSITION | 18§3921 | Nolle Prossed Disposition Date: 05/23/2006 Sentence Date: 05/23/2006 Disposing Authority: Dempsey, Thomas | ____ Costs/ ____ Fines ____ EMSA ____ MCARE ____ Rest |
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 3 - THEFT BY RECEIVING STOLEN PROPERTY | 18§3925 | Nolle Prossed Disposition Date: 03/12/2024 Sentence Date: 05/23/2006 Disposing Authority: Djerassi, Ramy I. | ____ Costs/ ____ Fines ____ EMSA ____ MCARE ____ Rest |
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 4 - CRIMINAL MISCHIEF | 18§3304 | Nolle Prossed Disposition Date: 05/23/2006 Sentence Date: 05/23/2006 Disposing Authority: Dempsey, Thomas | ____ Costs/ ____ Fines ____ EMSA ____ MCARE ____ Rest |
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 5 - CRIM TRESPASS BLDGS/OCCUP STRUC | 18§3503 | Nolle Prossed Disposition Date: 05/23/2006 Sentence Date: 05/23/2006 Disposing Authority: Dempsey, Thomas | ____ Costs/ ____ Fines ____ EMSA ____ MCARE ____ Rest |

**Comments:** Defendant's PCRA Petition has been Granted - Sentence Vacated, New Trial granted.
Commonwealth's Motion to Nolle Prosse has been Granted.
Honorable Ramy I. Djerassi; Assistant District Attorney: Jennifer Andress; Defense Counsel: George Shotzbarger; Court
Reporter: Danielle Gleason; Court Clerk: Chenoa Hitchcock

BY THE COURT:



___March 21, 2024___                                
Date                                         Judge Ramy I. Djerassi

9045680501

## Trial Disposition and Dismissal Form

_____ Currently in County Prison
_____ Intake given at time of Plea
_____ Plea
_____ Plea & Sentencing
_____ Trial
_____ IPP

_____ ARD
_____ Standard
_____ Revo. (Prob./Parole)
_____ ICC
_____ Bench Warrant Review Hearing

File # _____

Presently on supervision with P.O. _____

Page: ___2___ of ___2___
Date: _____
PSI Agent: _____
Court Rep. Initials: _____
Case Assigned To: _____
Collections Initials: _____

### DISPOSITION / COMMITMENT

Name: Garcia, Rafael          Time: _____

Race: White   Sex: Male      PID: 0698952

Sentencing Date: _____

Defense Counsel: Shotzbarger, George J.

48 Hrs: _____  30 Days: _____  90 Days: _____

D.A.: Philadelphia County District Attorney's Office

Disp.Authority: Dempsey, Thomas

Typing Date: _____

Court Room: 1106

BAC: _____     CRN Date: _____

| DOCKET OTN DATE of OFFENSE | COUNT - OFFENSE FINE RANGE PLEA | OFFENSE CODE GRADE | DISPOSITION DISPOSITION DATE SENTENCING DATE | FINES COSTS RESTITUTION |
|---|---|---|---|---|
| CP-51-CR-0804021-2005 N 304753-1 06/23/2004 | 6 - CRIMINAL CONSPIRACY | 18§903 | Nolle Prossed Disposition Date: 05/23/2006 Sentence Date: 05/23/2006 Disposing Authority: Dempsey, Thomas | Costs/ _____ Fines _____ EMSA _____ MCARE _____ Rest |
| N 304753-1 | | | | Costs/ _____ Fines _____ EMSA _____ MCARE _____ Rest |
| N 304753-1 | | | | Costs/ _____ Fines _____ EMSA _____ MCARE _____ Rest |
| N 304753-1 | | | | Costs/ _____ Fines _____ EMSA _____ MCARE _____ Rest |
| N 304753-1 | | | | Costs/ _____ Fines _____ EMSA _____ MCARE _____ Rest |

**Comments:** Defendant's PCRA Petition has been Granted - Sentence Vacated, New Trial granted.
Commonwealth's Motion to Nolle Prosse has been Granted.
Honorable Ramy I. Djerassi; Assistant District Attorney: Jennifer Andress; Defense Counsel: George Shotzbarger; Court
Reporter: Danielle Gleason; Court Clerk: Ghenea Hitchcock

BY THE COURT:

_____March 21, 2024_____
Date

_____
Judge Ramy I. Djerassi

Commonwealth of Pennsylvania
v.
Rafael Garcia

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

DOCKET NO:        CP-51-CR-0807401-2005
DATE OF ARREST: 01/06/2005
OTN:              N 314152-6
SID:              186-84-90-0
DOB:
PID:              0698952

# PCRA RESENTENCING ORDER

AND NOW, this 12th day of March, 2024, the defendant's PCRA Petition has been Granted-

Sentence Vacated, New Trial Ordered.

The defendant has pled Guilty to the charges of Burglary, Receiving Stolen Property, and Criminal Conspiracy.

The new sentence is as follows:

**Count 1 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.
The following conditions are imposed:
Other: Court recommends parole per State Parole guidelines.
Other:ThetotalAggregatesentenceforCP-51-CR-0804041-2005,CP-51-CR-0804051-2005,andCP-51-CR-0807401
is 17 1/2 years to 35 years.
Credit Time Served - Resentence/Amended State Sent - Credit Time Served: Credit for Time Served as previously
awarded on original sentence of 05/23/2006 as well as all time previously served on this case.
This sentence shall commence on 03/12/2024.

**Count 2 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 3 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 4 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.

**Count 5 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 6 - 18 § 3502 §§ A - Burglary (F1)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) In SCI Albion.
This sentence shall commence on 03/12/2024.



9046929751

Commonwealth of Pennsylvania
v.
Rafael Garcia

Order of Sentence

Docket No: CP-51-CR-0807401-2005

**Count 19 -** 18 § 3925 §§ A - Receiving Stolen Property  (F3)
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 20 -** 18 § 3925 §§ A - Receiving Stolen Property  (F3)
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 21 -** 18 § 3925 §§ A - Receiving Stolen Property  (F3)
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 22 -** 18 § 3925 §§ A - Receiving Stolen Property  (F3)
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 23 -** 18 § 3925 §§ A - Receiving Stolen Property  (F3)
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

**Count 193 -** 18 § 903 §§ A1 - Criminal Conspiracy Engaging - Burglary  (F1)
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

LINKED SENTENCES:
Link 1
    CP-51-CR-0807401-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 193 (18 § 3502 §§ A) - Confinement
Link 2
    CP-51-CR-0807401-2005 - Seq. No. 19 (18 § 3925 §§ A) - Confinement is Consecutive to
    CP-51-CR-0807401-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement
Link 3
    CP-51-CR-0807401-2005 - Seq. No. 193 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 2 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 3 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 4 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 5 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 6 (18 § 3502 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 20 (18 § 3925 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 21 (18 § 3925 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 22 (18 § 3925 §§ A) - Confinement is Concurrent with
    CP-51-CR-0807401-2005 - Seq. No. 23 (18 § 3925 §§ A) - Confinement

Commonwealth of Pennsylvania                    Order of Sentence
v.
Rafael Garcia

Docket No: CP-51-CR-0807401-2005

The defendant shall pay the following:

| | Fines | Costs | Restitution | Crime Victim's Compensation Fund - Victim / Witness Services Fund | Total Due |
|---|---|---|---|---|---|
| Amount: | $0.00 | $202.00 | $0.00 | $60.00 | $262.00 |
| Balance Due: | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

All remaining charges are Nolle Prossed.

Honorable Ramy I. Djerassi; ADA: Jennifer Andress; Defense Counsel: George Shotzbarger;
Court Reporter: Danielle Gleason; Court Clerk: Ghenea Hitchcock/Court Services Manager: Katrina Young

BY THE COURT:

_____
Judge Ramy I. Djerassi

CPCMS 2066

Printed: 03/21/2024  2:31:32PM

Commonwealth of Pennsylvania
v.
Rafael Garcia

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

DOCKET NO:      CP-51-CR-0804041-2005
DATE OF ARREST: 10/28/2004
OTN:            N 302451-2
SID:            186-84-80-0
DOB:            ▮▮▮▮▮▮
PID:            0698952

# PCRA RESENTENCING ORDER

AND NOW, this 12th day of March, 2024, the defendant's PCRA Petition has been GRANTED - Sentence Vacated, New Trial Ordered.

The defendant has pled Guilty to the charges of Burglary and Receiving Stolen Property. The new sentence imposed is as follows:

**Count 1 - 18 § 3502 §§ A - Burglary (F2)**
To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) in SCI Albion.
The following conditions are imposed:
Credit Time Served - Resentence/Amended State Sent - Credit Time Served: Credit for Time Served as previously awarded on original sentence of 05/23/2006 as well as all time previously served on this case.
Other: Court recommends parole per State guidelines.
This sentence shall commence on 03/12/2024.

**Count 3 - 18 § 3925 §§ A - Receiving Stolen Property  (M1)**
To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.
This sentence shall commence on 03/12/2024.

LINKED SENTENCES:
Link 1
CP-51-CR-0804041-2005 - Seq. No. 3 (18 § 3925 §§ A) - Confinement is Concurrent with
CP-51-CR-0804041-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement
Link 2
CP-51-CR-0804041-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement is Consecutive to
CP-51-CR-0807401-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement

The defendant shall pay the following:

|  | Fines | Costs | Restitution | Crime Victim's Compensation Fund - Victim / Witness Services Fund | Total Due |
|---|---|---|---|---|---|
| Amount: | $0.00 | $25.00 | $0.00 | $0.00 | $26.00 |
| Balance Due: | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

CP-51-CR-0804041-2005 msan Comm. v. Garcia, Rafael
Order - Sentence/Penalty Imposed


9045696371

Commonwealth of Pennsylvania                              Order of Sentence
                    v.
            Rafael Garcia

                                                Docket No: CP-51-CR-0804041-2005

 All remaining charges are Nolle Prossed.

Honorable Ramy I. Djerassi
 Assistant District Attorney: Jennifer Andress: Defense Counsel: George Shotzbarger; Court Reporter: Danielle
Gleason; Court Clerk: Ghenea Hitchcock

                                           BY THE COURT:

                                           Judge Ramy I. Djerassi

                                                        Printed: 03/15/2024 10:48:24AM

CPCMS 2066

Commonwealth of Pennsylvania
v.
Rafael Garcia

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

DOCKET NO:      CP-51-CR-0804051-2005
DATE OF ARREST: 10/28/2004
OTN:             N 302451-2
SID:             186-84-90-0
DOB:
PID:             0698952

# PCRA RESENTENCING ORDER

AND NOW, this 12th day of March, 2024, the defendant's PCRA Petition has been GRANTED - Sentence Vacated, New Trial Ordered.

The defendant has pled Guilty to the charges of Burglary and Receiving Stolen Property. The new sentence imposed is as follows:

**Count 1 - 18 § 3502 §§ A - Burglary  (F1)**
    To be confined for a minimum period of 5 Year(s) and a maximum period of 10 Year(s) in SCI Albion.
    The following conditions are imposed:
        Credit Time Served - Resentence/Amended State Sent - Credit Time Served: Credit for Time Served as previously awarded on original sentence of 06/23/2006 as well as all time previously served on this case.
        Other: Court recommends parole per State Parole guidelines.
    This sentence shall commence on 03/12/2024.

**Count 3 - 18 § 3925 §§ A - Receiving Stolen Property  (M1)**
    To be confined for a minimum period of 2 Year(s) 6 Month(s) and a maximum period of 5 Year(s) in SCI Albion.

LINKED SENTENCES:
    Link 1
        CP-51-CR-0804051-2005 - Seq. No. 3 (18 § 3925 §§ A) - Confinement is Concurrent with
        CP-51-CR-0804051-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement
    Link 2
        CP-51-CR-0804051-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement is Concurrent with
        CP-51-CR-0804041-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement
    Link 3
        CP-51-CR-0804051-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement is Consecutive to
        CP-51-CR-0807401-2005 - Seq. No. 1 (18 § 3502 §§ A) - Confinement

The defendant shall pay the following:

|          | Fines  | Costs    | Restitution | Crime Victim's Compensation Fund - Victim / Witness Services Fund | Total Due |
|----------|--------|----------|-------------|------------------------------------------------------------------|-----------|
| Amount:      | $0.00 | $202.00 | $0.00 | $60.00 | $262.00 |
| Balance Due: | $0.00 | $0.00   | $0.00 | $0.00  | $0.00   |

CP-51-CR-0804051-2005 msan Comm. v. Garcia, Rafael
Order - Sentence/Penalty Imposed

Printed: 03/15/2024 10:30:18AM

CPCMS 2066



9045727931

Commonwealth of Pennsylvania
v.
Rafael Garcia

Order of Sentence

Docket No: CP-51-CR-0804051-2005

All remaining charges are Nolle Prossed.
Honorable Ramy I. Djerassi
Assistant District Attorney: Jennifer Andress; Defense Counsel: George Shotzbarger; Court Reporter: Danielle Gleason; Court Clerk: Ghenea Hitchcock

BY THE COURT:

Judge Ramy I. Djerassi

Printed: 03/15/2024 10:30:18AM

CPCMS 2066