IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFAEL GARCIA, | : |
| | : CIVIL ACTION No. 24-6316 |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CITY OF PHILADELPHIA and | : |
| BRIDGET L. KIRN | : |
| | : |
| Defendants. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT,
BRIDGET KIRN'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**I.     BACKGROUND**

Plaintiff, Rafael Garcia, was prosecuted by Defendant, former Assistant District Attorney Bridget Kirn ("Kirn") in the Philadelphia's District Attorney's Office and sentenced on May 23, 2006 to a term of incarceration after his conviction of 37 counts each of Burglary and Receiving Stolen Property, as well as related charges that included Corrupt Organizations.  (ECF No. 17 at ¶ 14.) This conviction was vacated on March 12, 2024.  (*Id.* at ¶ 94.) On March 31, 2025, Plaintiff filed an Amended Complaint against Kirn and the City of Philadelphia alleging that they are liable to him under 42 U.S.C. sect. 1983 for denying him a fair trial and depriving him of liberty without due process, in violation of the Fourteenth Amendment to the United States Constitution.  Plaintiff's Amended Complaint alleges that Kirn fabricated or tampered with evidence by lying to

1

the jury during closing argument (*id.* at ¶ 125(a)); concealed material evidence (*id.* at ¶ 125(b)); threatened witnesses to obtain inculpatory statements (*id.* at ¶ 125(c)); and failing to investigate evidence that exculpated the Plaintiff (*id.* at ¶ 125(d)).  Plaintiff claims, additionally, that Kirn conspired against him to deny him a right to a fair trial.  (*Id.* at ¶¶ 129-131.).  Furthermore, Plaintiff alleges that Kirn failed to intervene with respect to the conduct of Philadelphia police officers during the course of their investigation.  (*Id.* ¶ 134.)  Finally, Plaintiff claims that Kirn is liable for failing to train others in connection with the prosecution of Plaintiff and that Kirn is liable for failing to supervise other agents of the District Attorney's Office.  (*Id.* at ¶¶137-139.)

      Despite these conclusory characterizations of ADA Kirn's conduct, a review of Plaintiff's Amended Complaint reveals clearly that Plaintiff's claims arise entirely from ADA Kirn's failure to disclose exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  According to the Amended Complaint, the Commonwealth's prosecution of Plaintiff was largely based upon the testimony of three "critical" witnesses:  William Leinhauser, Tania Eckert, and Jocelyn Garcia.  (ECF No. 17 at ¶ 21.) Plaintiff contends that ADA Kirn failed, prior to trial, to disclose information about a cooperation agreement between the Commonwealth and Leinhauser in relation to Leinhauser's robbery conviction (*id.* at ¶¶ 36-49); that she failed to disclose information about psychiatric treatment Ms. Garcia had received (*id.* at ¶¶ 50-59); and that she failed to disclose information about a grant of immunity to Eckert.  (*Id.* at ¶¶

104-108.) Plaintiff contends repeatedly that Kirn's withholding of this evidence violated *Brady*. (*Id.* at ¶¶ 77-82, 100-102.) Plaintiff further alleges that the withholding of this evidence was premeditated, as evinced by his discovery during Post-Conviction Relief Act ("PCRA") proceeding of notes that reflected, verbatim, Kirn's opening statement and summation to the jury. (*Id.* at ¶¶ 85-92.)

For the following reasons, the doctrine of absolute immunity shields ADA Kirn from liability to Plaintiff, and the Amended Complaint as to defendant Kirn must be dismissed.

### III.    **12(B)(6) STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if the pleadings fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." When ruling on a motion to dismiss, courts typically make their decisions based on "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."

*Gelman v. State Farm Mut. Auto. Ins. Co.*, No. CIV.A. 06-5118, 2007 WL 2306578, at *3 (E.D. Pa. Aug. 9, 2007) (internal citations omitted).

3

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The United States Supreme Court has established the standard by which the sufficiency of federal pleadings is to be assessed:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 677-79 (internal citations and quotations omitted).

## II.   ARGUMENT

### A.   DEFENDANT KIRN IS ABSOLUTELY IMMUNE FROM LIABILITY FOR ACTIONS TAKEN AS AN ADVOCATE FOR THE COMMONWEALTH.

4

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the United States Supreme Court held that a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial. The Court's holding was predicated upon an inquiry into the well-settled, common-law rule of immunity for prosecutors and its underlying public policy considerations. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

> Those considerations supported a rule of absolute immunity for conduct of prosecutors that was intimately associated with the judicial phase of the criminal process. In concluding that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983, we did not attempt to describe the line between a prosecutor's acts in preparing for those functions, some of which would be absolutely immune, and his acts of investigation or administration, which would not.

*Id.* at 270 (footnotes and internal citations and quotations omitted).

> The Court in *Imbler* declined to accord prosecutors only qualified immunity because, among other things, suits against prosecutors for initiating and conducting prosecutions could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. The Court also noted that there are other

5

>checks on prosecutorial misconduct, including the criminal law and professional discipline.

*Burns v. Reed*, 500 U.S. 478, 485-86 (1991) (internal citations and quotations omitted).

The *Imbler* court recognized that

>suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and ultimately in every case the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a s 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury. It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.
>
>The affording of only a qualified immunity to the prosecutor also could have an adverse effect upon the functioning of the criminal justice system. Attaining the system's goal of accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence. The veracity of witnesses in criminal cases frequently is subject to doubt before and after they testify, as is illustrated by the history of this case. If prosecutors were hampered in exercising their judgment as to the use of such witnesses by concern about resulting personal liability, the triers of fact in criminal cases often would be denied relevant evidence.

> The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment.

*Imbler*, 424 U.S. at 425-27.

> The [*Imbler*] Court therefore held that prosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process. Each of the charges against the prosecutor in *Imbler* involved conduct having that association, **including the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence**. The Court expressly declined to decide whether absolute immunity extends to those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate. It was recognized, though, that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.

*Burns*, 500 U.S. at 485-86 (emphasis added; internal citations and quotations omitted).

Courts have applied a functional approach to the characterization of a prosecutor's actions, *see id.* (listing cases applying a "functional approach" to

immunity), and have emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Id.*

In determining whether a prosecutor has functioned as an "advocate," courts consider, *inter alia*, whether a determination of probable cause had already been made at the time the prosecutor's actions were taken, *see Buckley, supra,* at 274 ("a prosecutor neither is, nor should he consider himself to be, an advocate before he has probable cause to have anyone arrested"); and whether their conduct was "'directly connected with the conduct of a trial' and 'necessarily required legal knowledge and the exercise of related discretion.'" *Fogle v. Sokol*, 957 F.3D 148, 160 (3d Cir. 2020), *quoting Van de Kamp v. Goldstein*, 555 U.S. 335, 240 (2009). Where a prosecutor is alleged to have conducted investigative activity, the "key to the absolute immunity determination is . . . the underlying function that the investigation serves and the role the prosecutor occupies in carrying it out." *Fogle, supra,* at 163.

### 1. ADA Kirn Is Immune from Suit for Withholding Exculpatory Information.

"It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). This principle applies even where the exculpatory information has been withheld deliberately and "even when they withhold evidence after trial while the criminal conviction is on appeal." *Id.* Indeed, in *Imbler*, the Supreme Court held that

prosecutors in the case were absolutely immune from liability for conduct that included the alleged knowing use of false testimony at trial and the alleged deliberate suppression of exculpatory evidence. *Burns,* 500 U.S. at 486.

Plaintiff devotes considerable energy to asserting that ADA Kirn's withholding of exculpatory evidence was deliberate. (*See* ECF No. 17 at ¶¶ 37, 75-76, 82-83.) However, consistent with the analysis in *Imbler,* this alleged conduct of ADA Kirn falls squarely within the scope of her actions as advocate for the Commonwealth of Pennsylvania and is protected by absolute immunity irrespective of whether the conduct was intentional. *Id.* at 425-27; *see also Gainey, et al. v. City of Philadelphia, et al.,* 704 F.Supp.3d 589, 604 (E.D. Pa. 2023); *Natividad v. City of Philadelphia, et al.,* No. 22-CV-5061, 2023 WL 7412931 *3 (E.D. Pa. Nov. 9, 2023).

### 2. ADA Kirn is absolutely immune from Plaintiff's claim that she fabricated evidence.

To the extent a coherent claim can be discerned that ADA Kirn fabricated evidence against Plaintiff – as distinct from allegations that she concealed exculpatory evidence concerning the background of witnesses who implicated Plaintiff – this claim, too, is foreclosed by the doctrine of absolute immunity. In *Imbler* and in subsequent cases, courts have extended absolute immunity to a prosecutor who knowingly used false evidence, *see Burns,* 500 U.S. at 486; suborns perjury, or even commits perjury or falsifies evidence, as long as the acts were committed as part of the prosecutor's role in the judicial system. *See Johnson v. City of Reading,* 2023 WL 1783775 *15 (E.D. Pa. 2023)

9

(quoting *Davis v. Grusemeyer*, 996 F.2d 617, 630 n.28 (3d Cir. 1993), *overruled on other grounds by Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644 (3d Cir. 1998)). Moreover, that the evidence implicating him may have been disputed doesn't make it fabricated; the Third Circuit has explicitly rejected the notion that a claim for fabricated evidence can be based on evidence that is simply disputed. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014). Accordingly, any claim Plaintiff has asserted based upon ADA Kirn's alleged fabrication of evidence must be dismissed, as it is barred by the doctrine of absolute immunity.

### 3. ADA Kirn is absolutely immune from Plaintiff's claim that she prosecuted Plaintiff without considering exculpatory evidence.

A prosecutor is absolutely immune when making the decision to initiate a prosecution, even when acting without a good-faith belief that any wrongdoing has occurred." *Natividad*, 2023 WL 7412931, at *4; *see also Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (holding that a prosecutor's filing of an arrest warrant and charging documents are protected by absolute immunity). This immunity encompasses decisions to continue a prosecution despite conflicting evidence. *See Imbler*, 424 U.S. at 426 n.24. Accordingly, this claim, too, must be dismissed as barred by the doctrine of absolute immunity.

### 4. ADA Kirn is absolutely immune from Plaintiff's claim that she was involved in a conspiracy to deprive him of his right to a fair trial.

The doctrine of absolute prosecutorial immunity precludes conspiracy-based claims as well. *See Patterson v. City of Philadelphia*, No. CIV.A. 08-2140, 2009 WL 1259968, at *9 (E.D. Pa. May 1, 2009) ("The Court finds that the acts that the Plaintiff allege fall within the DA Defendants' prosecutorial function. Put simply, all of the alleged wrongful acts cited by Plaintiff concern the decision to prosecute and the handling of Plaintiff's prosecution once that decision was made. Accordingly, even if Plaintiff's allegations were true, the DA Defendants are immune from liability for their actions."); *Savage v. Bonavitacola*, No. CIV.A.03-0016, 2005 WL 568045, at *12 (E.D. Pa. Mar. 9, 2005) (plaintiff's allegation that the district attorney and all of the other defendants acted in concert and conspired to deprive him of his federal constitutional rights was dismissed as a result of absolute prosecutorial immunity); *Hull v. Mallon*, No. 00-5698, 2001 WL 964115, at *1 (E.D. Pa. Aug. 21, 2001) ("When the underlying activity is cloaked with prosecutorial immunity, a conspiracy claim is similarly precluded ..."); *Flowers v. Marino*, No. CIV. A. 93-1212, 1993 WL 331825, at *2 (E.D. Pa. Sept. 2, 1993) ("Allegations that the district attorney and assistant district attorney conspired with others and that the wrongs done him were racially motivated, do not strip the prosecuting attorneys of their absolute immunity from civil damage claims," where the conduct complained of is "intimately associated with the judicial phase of the criminal process."); *Barnes v. City of Coatesville*, No. Civ. A. 93-1444, 1993 WL 259329, at *8 (E.D. Pa. June 28, 1993) ("[Plaintiff's] allegation of conspiracy does not affect [the assistant district attorney's]

entitlement to immunity . . . [The assistant district attorney] is absolutely immune from liability for the Section 1983, 1985, 1986 and 1988 claims for malicious prosecution.").

As Plaintiff's conspiracy claim is based on the alleged conduct of ADA Kirn during the judicial phase of the criminal process, his claim is barred by the doctrine of absolute immunity.

### B. DEFENDANT KIRN IS ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFF'S FAILURE TO INTERVENE CLAIM.

The doctrine of qualified immunity has long "protect[ed] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity results in "immunity from suit rather than a mere defense to liability," [*id.*,] qualified immunity inquiries "must be resolved at the earliest possible stage of the litigation." *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013).

"In resolving questions of qualified immunity, 'courts engage in a two-pronged inquiry: (1) whether the plaintiff sufficiently alleged the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the official's conduct.'" *Bland v. City of Newark*, 900 F.3d 77, 83 (3d Cir. 2018). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to tackle first. *Pearson*, 555 U.S. at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Recently, "the Supreme Court reiterated the 'longstanding principle that clearly established law should not be defined at a high level of generality,' but must instead 'be particularized to the facts of the case.'" *Bland*, 900 F.3d at 83 (quoting *White v. Pauly*, 580 U.S. 73, 77 (2017)). Although there need not be a "case directly on point" to define a clearly established right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 23 (2015). Therefore, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

Here, it was not clearly established that a prosecutor should intervene on a defendant's behalf to protect him from the conduct of police officers during the investigation of his case. *See Thorpe v. City of Phila.*, No. CV 19-5094, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (finding that a state actor was entitled to qualified immunity on a nonexcessive force failure to intervene claim because it was not beyond debate that failing to intervene, in this context, violated the plaintiff's constitutional rights); *see also Manivannan v. Cnty. of Ctr., Pennsylvania*, No. 4:21-CV-01359, 2022 WL 18276907, at *16 (M.D. Pa. Aug. 19, 2022) (relying on *Thorpe* to find that district attorney was entitled to qualified immunity as it pertained her alleged failure to intervene on the plaintiff's behalf to prevent his false arrest, malicious prosecution, and deprivation of

13

liberty), *report and recommendation adopted*, No. CV 4:21-1359, 2023 WL 173141 (M.D. Pa. Jan. 12, 2023).  Accordingly, ADA Kirn is entitled to qualified immunity.

### C. PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM THAT ADA KIRN COERCED OR THREATENED WITNESSES TO IMPLICATE PLAINTIFF.

Plaintiff's Amended Complaint asserts that ADA Kirn violated Plaintiff's due process rights by "[u]sing coercion and/or threats to obtain inculpatory witness statements and Mr. Garcia's 'confession.'"  (ECF No. 17 at ¶ 125(c).)  However, Plaintiff asserts no facts in support of this claim.  Accordingly, this claim as a basis for an alleged due process violation fails to meet the *Iqbal* standard and must be dismissed.

### D. PLAINTIFF'S AMENDED COMPLAINT FAILS TO STATE A CLAIM THAT ADA KIRN IS LIABLE FOR FAILING TO TRAIN INVESTIGATORS, OFFICERS, OR OTHER ATTORNEYS.

Plaintiff's Amended Complaint alleges that ADA Kirn "fail[ed] to adequately train, supervise and discipline the attorneys, investigators and other agents assigned to this investigation . . .  thereby allowing and causing these agents to deprive Mr. Garcia of his clearly established constitutional rights . . . "  (ECF No. 17 at Count IV.)  Plaintiff's complaint fails to allege, however, that ADA Kirn, the prosecutor assigned to prosecute Plaintiff ((ECF No. 17 at Count IV, ¶ 137), bore any responsibility for supervising or training anyone else in connection with the execution of their responsibilities.  While not dispositive of the precise structure of the Philadelphia District Attorney's Office at the time of Plaintiff's prosecution, this Court can take judicial notice that the Philadelphia District Attorney's Office employs hundreds of lawyers and staff of which,

14

at the time of her employment, Ms. Kirn was just one Assistant District Attorney. *See, e.g.*, https://phillyda.org/about/divisions-units-and-supervisors/. As is asserted by the City in its Motion to Dismiss the Amended Complaint, the City and the District Attorney's Office are distinct entities. (ECF No. 25.) Plaintiff's reference to the need for training "investigators" fails to describe them with sufficient specificity to determine who employed those "investigators" and whether they have any connection to ADA Kirn. In any event, however, Plaintiff asserts no evidence whatsoever, other than the bare allegation that she is "sued . . . in her supervisory capacity," that ADA Kirn occupied any supervisory role within the office over attorneys, investigators, or anyone else.

Moreover, the Supreme Court has held that a plaintiff seeking to establish a "failure to train" claim against a prosecutor must assert that prosecutors were not trained about the specific scenario related to the violation in his case. *Connick v. Thompson*, 563 U.S. 51, 67 (2011). Prosecutors are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment. *Id.* at 64. "The presumption that the lawyer is competent to provide the guiding hand that the [criminal] defendant needs applies even to young and inexperienced lawyers." *Id.* at 65, *citing U.S. v. Cronic*, 466 U.S. 648, 658 (1984). Thus Plaintiff's claim that ADA Kirn failed to train other attorneys in her office,

15

particularly, even assuming (as is not alleged) that she had some responsibility to do so, is inadequate to state a cognizable claim for relief.

## III. CONCLUSION

For all of the foregoing reasons, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. Accordingly, ADA Kirn respectfully requests that her Motion to Dismiss be granted, and Plaintiff's Amended Complaint dismissed with prejudice.

| | |
|---|---|
| **OF COUNSEL**: | /s/Shelley R. Smith |
| Archer & Greiner, P.C. | Shelley R. Smith |
| Three Logan Square | Attorney for Defendant, Bridget L. Kirn |
| 1717 Arch Street, Suite 3500 | |
| Philadelphia, PA  19103 | |
| Phone:  215-963-3300 | |
| srsmith@archerlaw.com | |