**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAFAEL GARCIA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  24-6316** |
| | : | |
| **CITY OF PHILADELPHIA,** *et al.* | : | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                                    **October 9, 2025**

There are sustainable claims in this wrongful imprisonment case, but it required a bit more effort to sift through the pleadings than is ideal.  After Rafael Garcia served a lengthy sentence for participating in a northeast Philadelphia burglary ring, his conviction was vacated and he sued here for damages.  According to Mr. Garcia, before his conviction in 2006, Detectives Gerard Brennan and Thomas Wilson interrogated Mr. Garcia for 16 hours, denied him access to his attorney, drafted a false confession, and forced him to sign it.  His sister, Jocelyn Garcia-Santiago, was threatened with criminal charges if she did not falsely testify against her brother.  And then in 2021, Mr. Garcia obtained access to additional documents and discovered there was more to the story.  Mr. Garcia says he discovered documents detailing benefits given to William Leinhauser, a key witness for the prosecution, and evidence that Mr. Leinhauser and Ms. Garcia-Santiago had troubled mental health histories — all of which would have helped Mr. Garcia at trial.

In something of an overly enthusiastic spaghetti toss, Mr. Garcia now brings various claims against the City of Philadelphia, the Philadelphia Police Department, the District Attorney's Office, Assistant District Attorney Bridget Kirn, Sergeant Joseph Del Grippo, and Detectives Brennan and Wilson.  Only some of these claims are actually viable.  The District Attorney's Office and Assistant District Attorney Kirn are entitled to absolute immunity.  The

Philadelphia Police Department is not a proper party.  And Mr. Garcia's claims against Sergeant Del Grippo are inadequately pled.  We dismiss those defendants, but allow some of the claims against Detective Brennan, Detective Wilson, and the City to proceed to discovery.

## I.    Factual Allegations

On May 23, 2006, plaintiff Rafael Garcia was sentenced to a prison term of 35 to 70 years after a Philadelphia jury convicted him of burglary, receiving stolen property, criminal conspiracy, and corrupt organizations for his alleged participation in a burglary ring.  DI 17 ¶¶ 14-15; DI 25 at 4.  The case was prosecuted by then-Assistant District Attorney (ADA) Bridget Kirn and investigated by ADA Kirn along with Sergeant Joseph Del Grippo, Detective Gerard Brennan, and Detective Thomas Wilson of the Philadelphia Police Department (PPD). DI 17 at ¶ 19.

Leading up to his conviction, Mr. Garcia signed a confession to 8 of the 37 alleged burglaries after Detectives Brennan and Wilson interrogated him for 16 hours, ignored his request for a specifically named attorney, drafted a confession, and threatened to arrest his wife and the mother of one of his children if he refused to sign it.  *Id.* at ¶¶ 14, 24-25.  The Philadelphia District Attorney's Office (DAO) also used three "cooperators" to deliver critical trial testimony: William Leinhauser, a co-conspirator; Tania Eckert, Mr. Garcia's girlfriend and uncharged accomplice; and Jocelyn Garcia-Santiago, Mr. Garcia's sister.  *Id.* at ¶ 21.

Years later, on August 27, 2018, Mr. Garcia filed a second *pro se* petition under the Post Conviction Relief Act (PCRA) in which he alleged that the prosecution and police intimidated and extorted Ms. Garcia-Santiago to secure her testimony among other "previously undisclosed prosecutorial and police misconduct."  *Id.* at ¶ 22.  The petition attached Ms. Garcia-Santiago's

affidavit averring that she was threatened with criminal charges and prison time if she did not testify that Mr. Garcia resided in the room where some of the fruits of the burglaries were found. *Id.* at 23. Mr. Garcia later filed an amended and counseled PCRA petition on July 13, 2021. *Id.* at ¶¶ 26-27. Pursuant to a 2018 policy change at the DAO, Mr. Garcia's PCRA counsel was permitted — after repeated requests — to inspect the DAO's files relating to his criminal case. *Id.* at ¶ 31. That inspection yielded seven large storage boxes of documents. *Id.* at ¶¶ 35-36.

The documents reviewed by Mr. Garcia's PCRA counsel revealed that Mr. Leinhauser was released from jail on his own recognizance at Detective Brennan's request. *Id.* at ¶ 37(a)-(b).[1] Mr. Leinhauser subsequently committed a robbery at knifepoint, for which he was charged. *Id.* at ¶ 37(c). The robbery charge was reduced from a felony-one to a felony-two, and Mr. Leinhauser entered a plea agreement to both the robbery and his participation in the burglary ring, for which he signed a memorandum of understanding. *Id.* at ¶ 37(d)-(f). Mr. Leinhauser's sentencing was deferred until after he testified against Mr. Garcia. *Id.* at ¶ 42. At Mr. Garcia's trial, ADA Kirn and her supervisors failed to correct Mr. Leinhauser's testimony that he was not promised anything in exchange for his testimony against Mr. Garcia. *Id.* at ¶ 38.

The documents reviewed by Mr. Garcia's PCRA counsel also detailed Mr. Leinhauser and Ms. Garcia-Santiago's extensive mental health histories. *Id.* at ¶ 40. Before his testimony, Mr. Leinhauser underwent "six or seven" psychiatric hospitalizations, made 17 suicide attempts, abused heroin, and was diagnosed with mixed personality disorder. *Id.* at ¶¶ 46-48. Ms. Garcia-

---

[1] The DAO also submitted a request to have Mr. Leinhauser moved out of his neighborhood (at Mr. Leinhauser's request), though there is no indication that this request was granted. *Id.* at ¶ 37(b).

Santiago was discharged from a psychiatric hospital at the time of Mr. Garcia's trial and before she ultimately stipulated to the testimony obtained by the DAO. *Id.* at ¶ 52. A report from her hospital stay noted that Ms. Garcia-Santiago suffered from de-paranoid schizophrenia and medication noncompliance, was hearing voices and having visual hallucinations, attempted to jump through a window, and was concussed. *Id.* at ¶ 53. Her treating physician requested that the presiding judge excuse her from testifying.[2] *Id.* at ¶¶ 56-58. None of this mental health related information regarding Mr. Leinhauser or Ms. Garcia-Santiago was provided to Mr. Garcia by ADA Kirn or anyone at the DAO despite their knowledge of its existence. *Id.* at ¶ 59, 75.

On May 12, 2024, the PCRA court granted Mr. Garcia's petition, vacated his sentence, and ordered a new trial. *Id.* at ¶ 94. Mr. Garcia then pled guilty to some of the charges of burglary, receiving stolen property, and criminal conspiracy. *Id.* at ¶ 95. He was released with time served and all other charges were *nolle prossed. Id.* Mr. Garcia brought this action on November 26, 2024, naming the City of Philadelphia (the City), the Philadelphia Police Department, the DAO, ADA Kirn, Sargeant Del Grippo, and Detectives Brennan and Wilson as defendants. DI 1; DI 17.

According to Mr. Garcia, the events here did not occur in a vacuum. DI 17 at ¶¶ 111-121. Dating back to the 1970s until the time of his prosecution, the City and its police department maintained a policy, practice, or custom of using coercive techniques in interviews and interrogations, fabricating inculpatory evidence, withholding exculpatory evidence, and

---

[2] The trial record contains no ruling on this request. *Id.* at ¶ 59.

otherwise violating the constitutional rights of criminal suspects. *Id.* at ¶¶ 111; 119. These practices included isolation of witnesses, prolonged interrogations, false promises, and threatened physical violence, all of which were well known to the city, the DAO, and its policymakers. *Id.* at ¶¶ 112-113, 117.

ADA Kirn also has a history of prosecutorial misconduct: in a 2016 retrial of a man originally convicted of the rape and murder of an elderly woman, ADA Kirn, acting as the lead prosecutor on the case, did not act when two police Detectives delivered false testimony regarding the existence of exculpatory testimony. *Id.* at ¶ 114. For Mr. Garcia, this history of alleged investigative and prosecutorial misconduct by the PPD and the DAO reflects a deliberate indifference to the need to train, supervise, and discipline officers and prosecutors. *Id.* at ¶¶ 115-116.

## II.    The Motions to Dismiss

Mr. Garcia brings five substantive claims, all under 42 U.S.C. § 1983. He asserts counts I, II, and III against individual defendants ADA Kirn, Sergeant Del Grippo, and Detectives Brennan and Wilson for deprivation of liberty without due process of law, civil rights conspiracy, and failure to intervene. *Id.* at ¶¶ 124-135. Count IV alleges supervisory liability against the PPD, the DAO, ADA Kirn, and Sargeant Del Grippo. *Id.* at ¶¶ 136-140. Count V is a claim for municipal liability against the City. *Id.* at ¶¶ 141-147. All defendants move to dismiss (DIs 25, 28, 32, 40, 51, 59); Mr. Garcia attempts to fend them off (DIs 33, 34, 37, 42, 54, 58).

ADA Kirn argues that she is absolutely immune from suit because the actions alleged by Mr. Garcia are prosecutorial in nature and were therefore taken in her capacity as a state actor.

DI 28-1 at 4-12.  Alternatively, she argues that qualified immunity requires dismissing Mr.

Garcia's failure to intervene claim against her and that Mr. Garcia failed to state a claim against

her.  *Id.* at 12-15.  Naturally, Mr. Garcia's interpretation differs.  He argues that ADA Kirn is not

absolutely immune because her actions were investigative and administrative (rather than

prosecutorial), that qualified immunity is inapplicable, and that the complaint states ample facts.

DI 34-1.

Like ADA Kirn, the DAO argues that it may not be sued for actions taken as a state

actor.  DI 40 at 5.  The DAO also argues that it cannot be sued at all under § 1983.  *Id.* at 7.  And

even if it were susceptible to suit under § 1983, says the DAO, Mr. Garcia does not state a viable

supervisory liability claim against it.  *Id.* at 8-12.  Mr. Garcia pushes back, again arguing that the

DAO lacks immunity from suit for its administrative and investigative actions, and that his

supervisory liability claim is adequately pled.  DI 42-1.

Sergeant Del Grippo and Detectives Brennan and Wilson argue that they are each

entitled to qualified immunity on all counts asserted against them because Mr. Garcia fails to

identify a cognizable right.[3]  DI 32 at 7-17; DI 51 at 7-14.  Sergeant Del Grippo also posits that

Mr. Garcia fails to sufficiently allege his personal involvement in the violation of Mr. Garcia's

rights.  DI 32 at 11-19.  Mr. Garcia responds that the rights he asserts are clearly established and

factually supported such that qualified immunity should not apply.  DI 37-1.  The City's

argument is straightforward: Mr. Garcia's municipal liability claim is inadequately pled and

---

[3] Detective Wilson's motion to dismiss is brought separately from Sargeant Del Grippo and Detective Brennan's, but makes nearly identical arguments except for those specific to Sargeant Del Grippo.  DI 37-1; DI 57-1.

must be dismissed.  DI 25 at 10-19.  Mr. Garcia disagrees.  DI 33.

Because we agree that ADA Kirn and the DAO are shielded by absolute immunity, we grant their motions to dismiss with prejudice.  We also agree with Sergeant Del Grippo that Mr. Garcia did not adequately allege his personal involvement, so he is dismissed without prejudice. But we disagree, in part, with Detectives Brennan and Wilson that they enjoy qualified immunity.  And we think that given the viability of the underlying claims against the etectives, Mr. Garcia's municipal liability claim is also adequately pled.

### III.    Standard of Review

As always, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility asks whether "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged[.]"  *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Notice pleading requires only "a short and plain statement of the claim" and "the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

For purposes of assessing absolute immunity, "[a]t the motion to dismiss stage, the conduct triggering absolute immunity must clearly appear on the face of the complaint and the official seeking immunity bears the burden of showing that the conduct qualifies for immunity."

7

*Pownall v. Krasner*, 2024 WL 4164621, at *3 (3d Cir. Sept. 12, 2024) (citing *Weimer v. County of Fayette, Pennsylvania*, 972 F.3d 177, 187 (3d Cir. 2020) (cleaned up))..

## IV.    Analysis

We dismiss ADA Kirn and the DAO with prejudice because we hold they are entitled to absolute immunity.  We also dismiss count IV without prejudice because Mr. Garcia did not adequately allege Sergeant Del Grippo's personal involvement.  Because Mr. Garcia had a right to be free from involuntary confessions and convictions based on perjured testimony, but not a right to intervention in the alleged violation of his constitutional rights, we send counts I and II against the Detectives to discovery but dismiss count III with prejudice.  Count V for municipal liability will also pass into discovery because we conclude that Mr. Garcia meets his burden at this stage.  The PPD is dismissed with prejudice as an improper party, and we reject Mr. Garcia's request to substitute the City in its place.  Counts VI and VII are dismissed without prejudice to Mr. Garcia's ability to pursue the damages outlined in those counts.

### A. ADA Kirn is absolutely immune from suit for her prosecutorial actions

ADA Kirn is entitled to absolute immunity.  "Prosecutors are absolutely immune from liability in § 1983 lawsuits for their official actions." *Harris v. Krasner*, 110 F.4th 192, 196 (3d Cir. 2024) (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (cleaned up)).  This doctrine is undergirded by public policy concerns that unfounded litigation could hinder the execution of the prosecutor's duties and impede the exercise of her independent judgment.  *See id.* at 110 F.4th at 196-97 (citing *Van de Kamp*, 555 U.S. at 341).  However, "a person is not immune from suit for every wrong [s]he commits just because [s]he happens to be employed as a prosecutor[.]"  *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011).

8

Accordingly, the absolute immunity inquiry is two-fold.  First, we "must ascertain just what conduct forms the basis for the plaintiff's cause of action[.]"  *Schneyder*, 653 F.3d at 332 (citing *Odd v. Malone*, 538 F.3d 202, 208) (3d Cir. 2008)).  And second, we "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served."  *Id.*  (citing *Odd*, 538 F.2d at 210).  We take a "functional approach," in applying this test, looking to "the nature of the function performed, not the identity of the actor who performed it[.]"  *Buckley v. Fizsimmons*, 509 U.S. 259, 269 (1993) (citations omitted).

Prosecutorial actions "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity.  *Weimer*, 972 F.3d at 187 (3d Cir. 2020) (citing *Odd*, 538 F.3d. at 208).  Those "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings'" are not.  *Id.*  And while the line between prosecutorial and investigative functions is sometimes "far from clear," there are some blaze marks.  *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992).  Evidence obtained before the filing of the criminal complaint, such as "pre-filing interactions with police" are considered investigative, while "[e]vidence obtained at or after the filing" and "connected with an existing prosecution . . . is absolutely protected."  *Id.*  In other words, "a prosecutor neither is, nor should [s]he consider [herself] to be, an advocate before [s]he has probable cause to have anyone arrested."  *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (quoting *Buckley*, 509 U.S. at 274).

Mr. Garcia alleges that ADA Kirn: reduced Mr. Leinhauser's robbery charge from a felony-one to a felony-two, DI 17 at ¶ 37(d); suborned Mr. Leinhauser's perjury when Mr. Leinhauser testified that he did not receive any benefits in exchange for his testimony, *id.* at ¶ 38; deferred Mr. Leinhauser's sentencing until after he testified against Mr. Garcia, *id.* at ¶ 43;

9

and withheld critical impeachment evidence about Mr. Leinhauser and Ms. Garcia-Santiago's mental health histories, *id.* at ¶¶ 49, 100-102.[4]  Each of these alleged actions occurred after Mr. Garcia was arrested and charged for his participation in the burglary ring and are therefore absolutely protected.  *Kulwicki*, 969 F.2d at 1465.[5]

The Third Circuit has repeatedly upheld absolute immunity for actions much like those Mr. Garcia alleges here.  *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006) ("[i]t is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); *Kulwicki*, 969 F.2d at 1465 ("[u]se of . . . false testimony in connection with the prosecution is absolutely protected."); *Fogle*, 957 F.3d at 164 (holding prosecutor was entitled to absolute immunity where plaintiff alleged prosecutor committed perjury "before and during trial.").  Each of Mr. Garcia's specific allegations relating to ADA Kirn fall squarely within the realm of actions "intimately associated with the judicial phases of litigation."  *Weimer*, 972 F.3d at 187 (3d Cir. 2020) (citing *Odd*, 538 F.3d. at 208).  While we cannot disagree with Mr. Garcia that some situations could present difficult, grey-area questions, this is not one of those situations.  We dismiss ADA Kirn with prejudice.

### B.  The District Attorney's Office is absolutely immune from suit and is not a

---

[4] Mr. Garcia also baldly alleges that ADA Kirn failed to supervise others within the DAO. DI 17. at ¶ 139.  But as ADA Kirn points out, the complaint does not otherwise allege that she "bore any responsibility for supervising or training anyone else in connection with the execution of their responsibilities."  DI 28 at 5.

[5] There is no indication that the alleged investigation ADA Kirn conducted "in conjunction" with Sargeant Del Grippo and Detectives Brennan and Wilson took place prior to Mr. Garcia's arrest.  DI 17 at ¶ 19.  Nor is that allegation adequately supported by facts elsewhere in the complaint.

**proper party**

The DAO is absolutely immune from suit for the same reasons as ADA Kirn. Mr. Garcia says that ADA Kirn's supervisors at the DAO suborned Mr. Leinhauser's perjury, DI 17 at ¶ 38; intentionally withheld impeachment evidence, *id.* at ¶¶ 49, 75; and committed misconduct at trial, *id.* at ¶ 102. As explained above, such actions are prosecutorial and are therefore inappropriate bases for a § 1983 claim. *Kulwicki*, 969 F.2d at 1465.

According to Mr. Garcia, the DAO's motion to dismiss should nonetheless be denied because he alleges a failure to supervise claim against it. DI 17 at ¶¶ 136-140; DI 41-1 at 6. He leans heavily on the Third Circuit's decision in *Carter v. City of Philadelphia*, which held that absolute immunity did not apply to a failure to supervise claim because the actions complained of there were administrative rather than prosecutorial. 181 F.3d 339, 353 (3d Cir. 1999) ("it appears that the function complained of here . . . involves local policies relating to training, supervision and discipline, rather than decisions about whether and how to prosecute violations of state law."). Critically, however, the DAO was not a party in *Carter*, and Mr. Garcia does not identify any Third Circuit case law in which the DAO was a proper party in a claim brought under § 1983.

To the contrary, many courts would dismiss the DAO out of hand. In *Reitz v. County of Bucks*, the Third Circuit concluded that "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability[.]" 125 F.3d 139, 148 (3d Cir. 1997). Since that decision, the Third Circuit and courts within this district have cited *Reitz* in holding that the DAO (or applicable county prosecutor's office) is not amenable to suit under Section 1983. *Ellakkany v. The Common Pleas Court of Montgomery* County, 658 F. App'x. 25, 28 (3d Cir. 2016) ("[t]he

District Attorney's Office . . . is unlikely to survive as a defendant because the department would not be considered separate from the municipality itself[.]"); *Briggs v. Moore*, 251 F. App'x. 77, 79 (3d Cir. 2007) ("the Monmouth County Prosecutor's Office is not a separate entity [from the municipality] that can be sued under § 1983."); *Taylor v. Northampton County Children & Youth Services*, 2025 WL 763681, at *7 (E.D. Pa. March 11, 2025) (Leeson, J.) ("the District Attorney's Office is not an entity amenable to suit."); *Dwight v. Krasner*, 2025 WL 1361285, at *5 (E.D. Pa. May 9, 2025) (Quiñones Alejandro, J.) (same); *Durham v. City of* Philadelphia, 2019 WL 3202506, at *6 (E.D. Pa. July 2019) (Smith, J.) (same); *Woolford v. Bartol*, 2022 WL 11804035, at *5 (E.D. Pa. Oct. 20, 2022) (Baylson, J.) (same); *Himmelreich v. United States*, 2011 WL 13344693, at *3 (E.D. Pa. April 21, 2011) (Diamond, J.) (same).[6]

 We acknowledge that not all courts in this district see it the same way. *See Harper v. City of Philadelphia*, 2018 WL 5784549, at *2 (E.D. Pa. Nov. 2, 2018) (Leeson, J.); *see also Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711 (E.D. Pa. 2015) (Robreno, J.) (declining to dismiss DAO and explaining "[t]he Court declines to walk down this unexamined path—a path not supported by a close reading of *Reitz*."); *Quintana v. City of Philadelphia*, 2017 WL 3116265, at *4 (E.D. Pa. July 21, 2017) (Pappert, J.).  Having considered those thoughtful decisions, we lean towards the facial constraint of *Reitz*.  *Estate of Tyler ex rel. Floyd*

---

[6] Related is the question of whether the Philadelphia DAO may be considered a "department" of the City of Philadelphia under 53 Pa. Cons. Stat. Ann. § 16257, which requires that suits against a department of the City be brought in the name of the City of Philadelphia. *See Brown v. City of Philadelphia*, 2025 WL 2099224, at *5 (E.D. Pa. July 24, 2025) (Baylson, J.).  The issue could use clarification, but we do not reach it here.  *Id.* (declining to decide the issue "in light of an impending decision from the Pennsylvania Supreme Court that may bear relevance to this issue[.]").

*v. Grossman*, 108 F. Supp. 3d 279, 288 (E.D. Pa. 2015) (Beetlestone, J.) (dismissing

Philadelphia DAO and noting, despite *Sourovelis*, that "it is the Third Circuit's decision in *Reitz*

. . . that controls here.").  We hold that the DAO is not an entity subject to suit under § 1983 and

dismiss the DAO with prejudice accordingly.

### C.  Sergeant Del Grippo will be dismissed for lack of personal involvement in the violation of Mr. Garcia's constitutional rights

Mr. Garcia does not allege facts sufficient to establish Sergeant Del Grippo's personal

involvement in the purported constitutional violations.  "[T]o state a claim against a defendant

for a civil rights violation, a plaintiff must allege that the defendant had 'personal involvement

in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat*

*superior*."  *Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 265 (E.D. Pa. 2022) (citing *Rode*

*v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  The requirement of personal involvement

may be satisfied "through allegations of personal direction or actual knowledge and

acquiescence," but "must be made with appropriate particularity."  *Rode*, 845 F.2d at 1207;

*Iqbal*, 556 U.S. at 663 ("[b]ecause vicarious liability is inapplicable to . . . § 1983 suits" a

plaintiff "must plead that each Government-official defendant, through his own individual

actions, has violated the Constitution.").

In Counts I and II, Mr. Garcia brings claims for deprivation of liberty without due

process of law and denial of a fair trial and civil rights conspiracy against all individual

defendants.[7]  DI 17 at ¶¶ 124-131.  In support of those claims, Mr. Garcia's specific allegations

---

[7] Mr. Garcia also brings a failure to intervene claim against all individual defendants.  DI 17 at ¶¶ 132-35.  For reasons discussed more fully below, Mr. Garcia's failure to intervene claim is dismissed with prejudice.

relating to Sergeant Del Grippo are that: Sergeant Del Grippo was a Sergeant in the major crimes unit for the PPD, *id.* at ¶ 6; participated in Mr. Garcia's investigation, *id.* at ¶ 19; and agreed with ADA Kirn and Detectives Brennan and Wilson to deprive Mr. Garcia of his Fourteenth Amendment Rights, *id.* at ¶ 129.  Mr. Garcia also includes Sergeant Del Grippo in generalized allegations that he applies to all individual defendants.  He says that the individual defendants each engaged in fabricating evidence, lying to the jury at trial, deliberately deceiving counsel and the court, and failing to conduct a reasonably thorough and fair investigation.  DI 17 at ¶¶ 125-130.

These allegations cannot sustain Mr. Garcia's claims.  Those paragraphs of the complaint that expressly name Sergeant Del Grippo are conclusory, and the generalized allegations lodged at all individual defendants do not adequately allege that Sergeant Del Grippo violated Mr. Garcia's constitutional rights "through his own individual actions."  *Iqbal*, 556 U.S. at 663; *see Lazar v. City of Philadelphia*, 2025 WL 886952, at *4 (E.D. Pa. March 21, 2025 (McHugh, J.) (granting motion to dismiss where plaintiff alleged sergeant "aided in the investigation[.]"). Unlike for the other individual defendants, there are no allegations outside of these generally drafted paragraphs that explain what Sergeant Del Grippo allegedly did with any degree of particularity.  We reject Mr. Garcia's attempt to confer liability upon a defendant by simply directing vague allegations at a group of defendants rather than making allegations that clearly allege what violation each defendant committed.

Count IV alleges a supervisory liability claim against the PPD, the DAO, ADA Kirn, and Sergeant Del Grippo.  DI 17 at ¶¶ 136-40.  This claim goes further than Counts I and II, but still comes up short.  In addition to the allegations detailed above, Mr. Garcia alleges in Count IV

14

that Sergeant Del Grippo acted with deliberate indifference to his constitutional rights by failing to adequately train, supervise and discipline the attorneys, investigators, Detectives, and police officers assigned to his investigation. *Id.* at ¶ 137. In addition, Mr. Garcia says that Sergeant Del Grippo was "personally involved" in the investigation and prosecution, that his deliberate indifference violated his clearly established duty between 2005 and 2006, and that his actions were the direct and proximate cause of his injuries. *Id.* at ¶¶ 138-140.

As with Counts I and II, the allegations in Count IV are not tethered to any facts sufficiently pled to render Sergeant Del Grippo's personal involvement plausible. Rather, these allegations amount to little more than a conclusory allegation that Sergeant Del Grippo was personally involved by virtue of his supervisory position. *Davis v. Samuels*, 608 Fed. Appx 46, 49 (3d Cir. 2015) (affirming dismissal of § 1983 claim where plaintiff alleged that defendant knew of the conduct complained of, but otherwise "made no attempt to allege particular facts leading to the conclusion that Samuels personally knew of or acquiesced in any of the challenged conduct of subordinates."); *Ogrod*, 598 F. Supp. 3d at 266 (dismissing § 1983 claim where allegations "amount to nothing more than that Washlick was Nodiff's supervisor[.]"). Given the repeated pleading deficiencies related to Sergeant Del Grippo's personal involvement in any of the constitutional violations alleged here, we dismiss Mr. Garcia's claims against him without prejudice to amend his complaint to plead his claims against Sergeant Del Grippo with the requisite particularity.

**D. Counts I and II against Detectives Brennan and Wilson will proceed to discovery, but count III will be dismissed with prejudice**

Mr. Garcia brings three substantive claims against Detectives Brennan and Wilson: deprivation of liberty without due process of law and denial of a fair trial, civil rights conspiracy, and failure to intervene. Because we hold that Mr. Garcia had clearly established rights to be free from involuntary confessions and convictions based on perjured testimony at the time of his investigation and trial, we deny the Detectives' motion to dismiss Mr. Garcia's deprivation of liberty and civil rights conspiracy claims. But we dismiss Mr. Garcia's claim for failure to intervene with prejudice because the Detectives have qualified immunity.

> *1. Mr. Garcia's claim for deprivation of liberty without due process of law and denial of a fair trial against Detectives Brennan and Wilson will proceed to discovery.*

Detectives Brennan and Wilson are not entitled to qualified immunity on Mr. Garcia's claim for deprivation of liberty without due process of law and denial of a fair trial. Qualified immunity is a juggling act: on the one hand, it accounts for "the need to hold public officials accountable when they exercise power irresponsibly," and on the other, it serves "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Stringer v. County of Bucks*, 141 F.4th 76, 84-85 (3d Cir. 2025) (quotations omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Thus, "[a]n official sued under § 1983 for an alleged constitutional violation is entitled to qualified immunity unless he (1) violated a constitutional right that (2) was clearly established when he acted." *Id.* at 85 (citing *George v. Rehiel*, 738 F. 3d 562, 571-72 (3d Cir. 2013)).

To get by qualified immunity, an officer must have "fair warning[.]" *Stringer*, 141 F.4th at 85 (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). It must "be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025) (citations and internal quotations omitted).  That requirement is satisfied where there is controlling precedent, a robust consensus of non-binding authority, or a "patently obvious" constitutional violation made clear by broad principles of law.  *Stringer*, 141 F.4th at 85 (citations and internal quotations omitted); *Urda*, 146 F.4th at 314 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

In Count I of his complaint, Mr. Garcia alleges that he was deprived of his right to due process and a fair trial because Detectives Brennan and Wilson fabricated, planted and/or tempered with evidence, used coercion and threats to obtain inculpatory witness statements (including his confession), deliberately deceived the court by concealing or suppressing evidence, and failed to conduct a reasonably thorough and fair investigation.  DI 17 at ¶ 125 (a)-(d).  Following oral argument on the present motions to dismiss, we ordered Mr. Garcia to provide supplemental briefing on the issue of qualified immunity, identifying the rights he contends were violated, where in the complaint the violation of those rights is alleged, and when that right was clearly established.  DI 57.  Mr. Garcia's supplemental brief argues that Detectvies Brennan and Wilson violated his Sixth Amendment right to counsel and his Fourteenth Amendment rights to be free from involuntary confessions and convictions based on perjured witness testimony.  DI  58 at 2.  He says those rights were violated when officers Brennan and Wilson interrogated him for 16 hours, ignored his request for his attorney, threatened to arrest his wife and the mother of one of his children if he refused to sign the confession which they drafted, and threatened to criminally charge his sister if she did not falsely testify against him.  *Id.*; DI 17 at ¶¶ 23-25.

Mr. Garcia's Sixth Amendment argument encounters a roadblock. He is correct that between 2004 and 2006 (when the burglary ring took place and Mr. Garcia was convicted) an officer would have had fair warning of the protections afforded by the Sixth Amendment. *Escobedo v. Illinois*, 378 U.S. 478, 491 (1964). But it was equally established at that time that the Sixth Amendment right to counsel is not triggered until after the initiation of adversary judicial proceedings, such as a "formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). In support of his Sixth Amendment argument, Mr. Garcia cites only to paragraph 24 of his complaint, which explains that Mr. Garcia was interrogated for 16 hours and denied access to counsel. DI 58 at 2; DI 17 at ¶ 24. It does *not* identify whether that interrogation took place before or after the initiation of adversary judicial proceedings, which is necessary to determining Mr. Garcia's entitlement to counsel under the Sixth Amendment at the time of his interrogation. Lacking any supporting allegations regarding whether adversary judicial proceedings had commenced, the Sixth Amendment does not present a basis on which Mr. Garcia can defeat qualified immunity. *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 777-78 (E.D. Pa. 1999) (dismissing § 1983 claims under Sixth Amendment where plaintiff did not allege "that formal charges had been initiated against him at the time of his questioning" or otherwise show that adversary judicial proceedings had commenced).

Unlike his Sixth Amendment claim, Mr. Garcia's right to be free from involuntary confessions under the Fourteenth Amendment gets past qualified immunity. Years before Mr. Garcia's eventual interrogation (sometime between 2004 and 2006), the United States Supreme Court made clear that the due process clause of the Fourteenth Amendment barred the admission

18

of involuntary confessions. *U.S. v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994) ("prior to the

Supreme Court holding that the Fifth Amendment applied to the states, it held that the Due

Process Clause of the Fourteenth Amendment bars the admission of 'involuntary' confessions.")

(citing *Colorado v. Connelly*, 479 U.S. 157, 163 (1986)).[8]  That right was therefore clearly

established under controlling precedent such that Detectives Brennan and Wilson would have

had fair warning.  *Urda*, 146 F.4th at 314 (citing *al-Kidd*, 563 U.S. at 742).

But Mr. Garcia's involuntary confession claim is informed by Fifth Amendment

precedent, too.  *See Missouri v. Seibert*, 542 U.S. 600, 607 (2004) (explaining "we concluded in

*Malloy v. Hogan*, 378 U.S. 1, 8 (1964), that the Fourteenth Amendment secures against state

invasion the same privilege that the Fifth Amendment secures against federal infringement" and

discussing unification of the "Fifth and Fourteenth Amendment voluntariness tests.") (cleaned

up).  And since the application of the Fifth Amendment to the states, case law articulating the

right to be free from involuntary confessions under the Fourteenth Amendment has been used to

better assess Fifth Amendment claims.  *See Swint*, 15 F.3d at 289 (assessing admissibility of

confession under the Fifth Amendment and noting that "the Fourteenth Amendment due process

cases provide the clearest definition of voluntariness.") (citation and quotation omitted).  It

follows that the prevalence of Fifth Amendment precedent articulating the right of an individual

to be free from self-incrimination would also place Detectives Brennan and Wilson on notice of

Mr. Garcia's right to be free from involuntary confessions.  *See Malloy*, 378 U.S. at 8; *see also*

---

[8] Detectives Brennan and Wilson seem to concede that this right was clearly established.
DI 59 at 5 ("Detectives Brennan and Wilson will not dispute that the Fourteenth Amendment
bars involuntary confessions.").

*Ogrod*, 598 F. Supp. at 270 (rejecting officers' claim of qualified immunity where plaintiff alleged that officers coerced him into signing a fabricated statement and used that statement against him at trial).[9]

Mr. Garcia's Fourteenth Amendment right not to be convicted on perjured testimony also defeats qualified immunity. As the Third Circuit has explained, "[t]he right not be convicted on perjured testimony used by prosecutors at trial has been clearly established by the Supreme Court since at least 1935[.]" *Dennis v. City of Philadelphia*, 19 F.4th 279, 289-290 (3d Cir. 2021) (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). That right was extended seven years later when the Supreme Court recognized "as a due process violation the conviction of a defendant through perjured testimony and the deliberate suppression of evidence favorable to the accused." *Id.* (citing *Pyle v. Kansas*, 317 U.S. 213, 216 (1942)). In light of Mr. Garcia's allegation that Detectives Brennan and Wilson threatened to charge his sister with crimes and send her to prison if she did not falsely testify against Mr. Garcia, DI 17 at ¶ 23, "the constitutional rule that framing criminal defendants through use of fabricated evidence . . . violates their constitutional rights applies with such obvious clarity that it is unreasonable for us to conclude anything other than that the Detectives were on sufficient notice that their fabrication of evidence violated clearly established law." *Id.* Count I of Mr. Garcia's complaint will proceed to discovery.

---

[9] To be clear, there is not a recognized cause of action under § 1983 for failure to follow *Miranda* procedures. *Olender*, 32 F. Supp. 2d at 786 (explaining *Miranda* violations cannot support 1983 claim because "violations of the prophylactic *Miranda* procedures do not amount to violations of the Constitution itself") (quoting *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994) (cleaned up)). A substantive Fifth Amendment violation, however, can give rise to a § 1983 claim. *See id.* at 787.

2. *Mr. Garcia's claim for civil rights conspiracy against Detectives Brennan and Wilson will proceed to discovery*

Mr. Garcia also adequately pleads a civil rights conspiracy against Detectives Brennan and Wilson. In Count II Mr. Garcia alleges that the individual defendants, acting within the scope of their employment and under color of state law, conspired to deprive him of his Fourteenth Amendment rights. DI 17 at ¶ 128. Detectives Brennan and Wilson argue that Mr. Garcia does not adequately plead a civil rights conspiracy. DI 32 at 15-16. And even if he does, according to the Detectives there can be no claim for civil rights conspiracy where they enjoy qualified immunity as to the underlying claims for violation of his constitutional rights. *Id.* We disagree. Having already determined that Detectives Brennan and Wilson are not entitled to qualified immunity as to Count I of the complaint, our focus is on whether Mr. Garcia sufficiently alleges a civil rights conspiracy between the Detectives.

While personal involvement must be pled with appropriate particularity, claims brought under § 1983 are subject to "the more liberal notice pleading standard" imposed under Federal Rule of Civil Procedure 8(a). *Evancho v. Fisher*, 423 F.3d 347, 352 (3d Cir. 2005). Stated differently, there is no heightened pleading standard for § 1983 claims. So to adequately plead a claim for civil rights conspiracy under § 1983, Mr. Garcia must allege that (1) two or more persons conspired to deprive him of his constitutional rights; (2) at least one of the conspirators performed an overt act in furtherance of the conspiracy; and (3) that overt act injured him or deprived him of any of his rights or privileges as a United States citizen. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 & n. 15 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir 2001).

21

The elements of civil rights conspiracy are adequately pled here.   Mr. Garcia's complaint alleges that ADA Kirn, Sergeant Del Grippo, and Detectives Brennan and Wilson all agreed among themselves to act in concert to deprive him of his Fourteenth Amendment rights. DI 17 at ¶ 129.  He says that the defendants — which include Detectives Brennan and Wilson — acted in furtherance of that conspiracy when they used coercion and/or threats to obtain incriminating witness statements and otherwise fabricated and tampered with evidence.[10]  *Id.* at ¶ 130(a)-(c).  And those acts, according to Mr. Garcia, were the direct and proximate cause of Mr. Garcia's injuries, including his wrongful trial and corresponding harms.  *Id.* at ¶ 131.  Count II will proceed to discovery against Detectives Brennan and Wilson.

### 3.   *Mr. Garcia's claim for failure to intervene will be dismissed*

In his final claim asserted against Detectives Brennan and Wilson, Mr. Garcia alleges that each of the individual defendants had opportunities to intervene on behalf of Mr. Garcia to prevent the violations he alleges, but failed to do so.  *Id.* at ¶¶ 133-135.  Detectives Brennan and Wilson respond that they are entitled to qualified immunity because "[t]here is no clearly established right to intervention by officers to prevent deprivation of liberty without due process[.]"  DI 32 at 16.  We agree with the Detectives.

While the Third Circuit has recognized failure to intervene claims in the Eighth Amendment excessive use of force context, it has not extended that right to other contexts.  *See Ogrod v. City of Philadelphia*, 598 F. Supp. 3d at 272; *Smith v. Mensinger*, 293 F.3d 641 (3d

---

[10] As is typical, Mr. Garcia also incorporates all preceding paragraphs into Count II.  DI 17 at ¶ 128.  Those paragraphs plainly allege that Detectives Brennan and Wilson interrogated Mr. Garcia for 16 hours, drafted a confession, forced him to sign it, and then used threats to get others to testify against him.  *Id.* at ¶¶ 23-25.

Cir. 2002) (recognizing failure to intervene in excessive use of force); *Weimer*, 972 F.3d at 191

(refusing to extend failure to intervene claim to prosecutors who fail to intervene to prevent

police investigatory misconduct); *Lozano v. New* Jersey, 9 F.4th 239, 246 n.4 (3d Cir. 2021)

(declining to extend failure to intervene claim to false arrest context).  Accordingly, courts

within this district have similarly refused to recognize failure to intervene claims outside the

excessive force context.  *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 672-73 (E.D.

Pa. 2017) (rejecting argument that precedent recognizing a failure to intervene in excessive force

cases extends to failure to intervene in claims for fabrication of evidence) (Robeno, J.); *Thorpe*

*v. City of Philadelphia*, 2020 WL 5217396, at *10 (E.D. Pa. Sept. 1, 2020) (Pratter, J.) (same);

*Handy v. City of Philadelphia*, 2025 WL 2618956, at *5 (E.D. Pa. Sept. 10, 2025) (Pappert, J.)

(dismissing claim for failure to intervene in deprivation of liberty without due process of law).

    We follow suit and heed the Supreme Court's call "not to define clearly established law

at a high level of generality."  *Weimer*, 972 F.3d at 192 (quoting *al-Kidd*, 563 U.S. at 742).

Because there is no clearly established right to police intervention in the deprivation of liberty

without due process of law and a fair trial today, there could not have been such a right in 2004.

Mr. Garcia's failure to intervene claim is dismissed with prejudice.

### E.  Mr. Garcia's *Monell* claim against the City will proceed on the underlying surviving individual claims

    In Count V Mr. Garcia brings his claim for municipal liability. He alleges that at the time

of his arrest and trial, the City of Philadelphia maintained a policy, practice, or custom of

unconstitutional conduct in burglary and other criminal investigations.  DI 17 at ¶ 142.  The City

moves to dismiss Mr. Garcia's municipal liability claim because Mr. Garcia has not defined the

alleged policy at issue, shown a pattern of similar incidents, or adequately pled a failure to train

or supervise.[11]  DI 25 at 9-18.  We disagree.

Liability under § 1983 may extend to a municipality where a plaintiff alleges either that "an unconstitutional policy or custom of the municipality led to his or her injuries . . . or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark,* 914 F.3d 789, 798 (3d Cir. 2019)).  Each of the two theories requires different facts to be pled. *Id.* at 105.  Mr. Garcia proceeds on both.

The "unconstitutional policy" theory requires that a municipal defendant have maintained a policy or custom leading to the plaintiff's injuries. *Id.* (citing *Reitz*, 125 F.3d at 145).  Under this theory, Mr. Garcia "must point to an official proclamation, policy or edict by a decision maker possessing final authority to establish a municipal policy" or otherwise "evince a given course of conduct so well-settled and permanent as to virtually constitute law." *Id.*  Mr. Garcia must also connect that alleged policy, practice, or custom to the injuries he sustained.  He can do so by alleging the City had knowledge of similar incidents, failed to take measures to prevent future occurrences, and that the failure to so act led to his injury. *Estate of Roman*, 914 F.3d at 798 (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990)).

The "failure or inadequacy" theory requires actions amounting to "deliberate indifference on the part of the municipality." *Forrest v. Parry*, 930 F.3d at 105 (citing *Reitz*, 125 F.3d at 145).  In support, Mr. Garcia must sufficiently allege three elements: "(1) municipal

---

[11] The City also dedicates a portion of its memorandum to explaining that the City cannot be held responsible for the actions of the DAO and its attorneys.  DI 25 at 10-14.  Because we dismiss the DAO and ADA Kirn, we do not decide the merits of this argument.

policymakers know that employees will confront a particular situation, (2) the situation involves

a difficult choice or a history of employees mishandling, and (3) the wrong choice by an

employee will frequently cause deprivation of constitutional rights." *Id.* at 106 (citing *Carter*,

181 F.3d at 357).  Naturally, such as here, the "failure or inadequacy" theory encompasses

claims that a municipality failed to adequately train or supervise its employees. *Id.* (citing

*Estate of Roman*, 914 F.3d at 798-99).

Mr. Garcia meets his burden at this stage.  He alleges that "dating back to at least the

1970s and continuing well beyond the time of the investigation" the City maintained a "policy,

practice, or custom of unconstitutional conduct in criminal investigations." DI 17 at ¶¶ 111,

142.  Included in that policy, practice, or custom was the use of coercive techniques in

interviews and interrogations, fabricating, tampering with, and planting evidence, and

fabricating incriminating statements procured by coercion. *Id.*  In support, Mr. Garcia identifies

the following examples where PPD engaged in unconstitutional investigatory practices: during

the 1980's courts within this district issued orders enjoining the PPD from unlawfully arresting

and detaining individuals, engaging in unlawful police sweeps during a murder investigations,

and stopping and frisking African American men during an investigation of a stalker, *id.* at

¶ 119; in the late 1980's and early 1990's a narcotics squad engaged in widespread

unconstitutional practices, including fabrication of and planting evidence, concealment of

evidence, and false allegations of criminality, *id.* at ¶ 120; and the entry of a consent decree by a

court in this district requiring reforms at the PPD related to its "investigative practices and

policies," *id.* at ¶ 121).

The City quarrels with this approach, arguing that Mr. Garcia fails to identify a policy or

custom of the city with specificity. DI 25 at 14-16. The City further contends that even if Mr.

Garcia does identify a policy or custom, he does not allege an adequate causal connection

between the alleged conduct and his injuries. *Id.* But to insist that Mr. Garcia identify a policy

or custom at such a high level of specificity would impose an unreasonably high bar at this

stage. *Carter*, 181 F.3d at 357-58 (concluding that the "insistence that Carter must identify a

particular policy and attribute it to a policymaker, at the pleading state without benefit of

discovery, is unduly harsh"); *Peña v. City of Lancaster*, 690 F. Supp.3d 494, 516 (E.D. Pa.

2023) (Schmehl, J.) (same). Mr. Garcia alleges that the City maintained a policy of

unconstitutional police conduct in criminal investigations, provides detailed allegations about

what that policy entailed, and adds examples of previous unconstitutional conduct. DI 17 at

¶¶ 111, 118-21. He further alleges that those municipal customs were the "moving force"

behind his injuries and damages. *Id.* at ¶ 147. Mr. Garcia has made sufficient allegations to

render dismissal of his "unconstitutional policy" claim inappropriate here.

The City also contends that Mr. Garcia's "failure or inadequacy" claim is not adequately

pled. Again, we disagree. Mr. Garcia alleges policymakers for the City had actual or

constructive notice of the above practices but failed to undertake any meaningful investigation

into repeated allegations of said conduct. *Id.* at ¶ 143. This knowledge is backed by allegations

of police misconduct dating back to the 1970s, including coercive interrogations, fabrication of

evidence, and false allegations of criminality, which Mr. Garcia says were not rectified by a

change in policy until 2014. *Id.* at ¶¶ 117-121. And, accepting Mr. Garcia's allegations as true,

the choice by Detectives Brennan and Wilson to interrogate him for 16 hours, fabricate a false

confession and force him to sign it under threat, and then threaten to charge his sister if she did

not falsely testify against him would violate his clearly established rights under the Fourteenth Amendment.  *Swint*, 15 F.3d at 289; *Dennis*, 19 F.4th at 289-290.  Given this context, Mr. Garcia logically alleges that the City failed to adequately train or supervise its officers with respect to the deprivation of constitutional rights.  DI 17 at ¶ 144.  We therefore find the City's contention that Mr. Garcia fails to plead a failure to train or supervise theory under § 1983 unconvincing.

Whether the evidence will ultimately support Mr. Garcia's allegations remains to be seen.  But we hold that his claims for municipal liability are adequately pled at this stage, and permit them to reach discovery.

### F.  The Philadelphia Police Department is dismissed pursuant to the Philadelphia home rule charter, and the City will not be substituted in its place

Mr. Garcia's complaint names the PPD in count IV for supervisory liability, and counts VI and VII for damages.  In its motion to dismiss, the City argues that that the PPD is not a proper party under 53 P.S. § 16257, which says that no department of the city maintains separate corporate existence and therefore all suits against a department of the City "shall be in the name of the city of Philadelphia."  DI 25 at 7.  Mr. Garcia seems to agree, but suggests he should be able to substitute the City into all counts naming the PPD.  DI 33 at 5-6.  We agree with the City's view.

As the City aptly points out, Count IV of the complaint alleges a supervisory liability claim under § 1983, but the PPD is named only in the heading of that Count.  DI 25 at 8.  And, as explained above, Mr. Garcia's claim for failure to train or supervise will proceed to discovery, so a claim for supervisory liability against the City would be unnecessarily

27

duplicative. *Id.* Thus, we decline to substitute the City for the PPD in Count IV. *See Thomas v. City of Chester*, 2016 WL 1106900, at *2 (E.D. Pa. March 21, 2016) (dismissing claims brought against officers in their official capacities as duplicative of municipal liability claims); *Wimbush v. City of Philadelphia*, 2017 WL 1355174, at *4 & n.2 (E.D. Pa. Apr. 13, 2017) (dismissing official capacity claims as "redundant" and noting "[i]t does not matter that these officials represent different aspects of city government . . . because these departments cannot be sued apart from the City of Philadelphia itself."); *Westrich v. Malvern Borough*, 2025 WL 2147360, at *8 (E.D. Pa. July 29, 2025) (dismissing claims as duplicative).

As to Counts VI and VII, the City argues that no substitution should be permitted because (1) it is already named in Count VI, and (2) punitive damages are not permitted in a claim for municipal liability. DI 25 at 9. We agree. *Fletcher v. O'Donnell*, 867 F.2d 791, 795 (3d Cir. 1989) (holding, in a § 1983 case, that "[n]o punitive damages may be recovered from the City."). We dismiss the PPD with prejudice and reject Mr. Garcia's request to substitute the City in its place.

### G. Counts VI and VII are dismissed without prejudice to Mr. Garcia's ability to pursue compensatory and punitive damages

Last, Sergeant Del Grippo and Detectives Brennan and Wilson move to dismiss counts VI (damages) and VII (punitive damages) as redundant. DI 32 at 19-20; DI 51 at 16. Mr. Garcia responds — without citing any authority in support — that these independent damages claims are proper because the elements of plaintiff's damages are not specified elsewhere in the complaint. DI 37-1 at 15. We disagree. Damages, including punitive damages, "are a form of relief and not the basis for a separate cause of action." *Mansman v. Tuman*, 970 F. Supp. 389, 404 (E.D. Pa. 1997); *McClain v. Citizen's Bank, N.A.*, 57 F. Supp. 3d 438, 443 (E.D. Pa. 2014)

28

(same). However, we "believe the import of [his] pleading is clear and Defendants have not been misled or prejudiced by this technical error[.]" *Mansman*, 970 F. Supp. at 404. Accordingly, we dismiss counts VI and VII without prejudice to Mr. Garcia's right to seek those damages at trial. *Id.*

## V.    Conclusion

For the reasons explained above, the motions to dismiss by ADA Kirn, the DAO, and Sergeant Del Grippo are **GRANTED.** The motions to dismiss by Detective Brennan, Detective Wilson, and the City of Philadelphia are **GRANTED** in part and **DENIED** in part.